FILED
United States Court of Appeals
Tenth Circuit

March 31, 2016

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

# UNITED STATES COURT OF APPEALS

## TENK CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff - Appellant,

v.

ADAN HUMBERTO DOMINGUEZ-
RODRIGUEZ,

Defendant - Appellee.

No. 15-2100

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. 2:15-CR-00886-JTM-1)**

James R. W. Braun, Assistant United States Attorney (Damon P. Martinez, United States Attorney, with him on the briefs), Albuquerque, New Mexico, for Plaintiff-Appellant.

Caleb Kruckenberg, Assistant Federal Public Defender, Las Cruces, New Mexico, for Defendant-Appellee.

Before **TYMKOVICH,** Chief Judge, **BRISCOE** and **MATHESON**, Circuit Judges.

**BRISCOE**, Circuit Judge.

Defendant Adan Humberto Dominguez-Rodriguez pleaded guilty to one count of illegally reentering the United States after having previously been deported, in violation of 8 U.S.C. § 1326(a) and (b). Prior to sentencing, the probation office recommended that the district court impose a sixteen-level enhancement to Dominguez-Rodriguez's base offense level because Dominguez-Rodriguez was previously deported after having been convicted in federal court of possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1). Dominguez-Rodriguez objected to the proposed sixteen-level enhancement. At sentencing, the district court sustained Dominguez-Rodriguez's objection, imposed an eight-level enhancement, and sentenced Dominguez-Rodriguez to six months' imprisonment. The government now appeals that sentence, arguing that the district court erred in failing to impose the sixteen-level enhancement. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we agree with the government and consequently remand with instructions to vacate Dominguez-Rodriguez's sentence and resentence.

**I**

*Factual background*

The underlying facts of this case are undisputed. On January 19, 2015, United States Border Patrol agents encountered Dominguez-Rodriguez in Hidalgo County, New Mexico. Dominguez-Rodriguez admitted that he was a citizen of Mexico and did not have legal authorization to enter or remain in the United

2

States. As part of their investigation, the Border Patrol agents determined that Dominguez-Rodriguez had been previously deported on December 21, 2013, after having been convicted in federal district court of possession with intent to distribute fifty grams and more of methamphetamine and having served a twenty-four-month sentence for that conviction.

*Procedural background*

On January 20, 2015, a criminal complaint was filed against Dominguez-Rodriguez charging him with illegally reentering the United States after having previously been deported, in violation of 8 U.S.C. § 1326(a) and (b). That same day, Dominguez-Rodriguez entered into a written "Fast Track Plea Agreement," pursuant to which he agreed to plead guilty to the charge alleged in the indictment and to waive his right to appeal or collaterally challenge his conviction and sentence. App. Vol. 1 at 7.

Under the terms of the plea agreement, the parties agreed that, for purposes of sentencing, Dominguez-Rodriguez's "Base Offense Level . . . w[ould] be the sum of Offense Level [eight] plus the sentencing guideline adjustment for [his] most serious prior criminal conviction as determined by the sentencing court." Id. at 9. The parties in turn agreed that Dominguez-Rodriguez's "Final Adjusted Offense Level" would "be the Base Offense Level minus a downward adjustment for acceptance of responsibility, and minus a four-level downward departure pursuant to USSG § 5K3.1" (for a total downward adjustment of six or seven

3

levels, depending upon the Base Offense Level).  Id.  Finally, the parties agreed

"to a sentence within the resulting guideline range after the application of the[se]

. . . stipulations."  Id.

The probation office prepared a presentence investigation report (PSR).

Consistent with the terms of the plea agreement, the PSR applied a base offense

level of eight.  The PSR then applied a sixteen-level increase pursuant to U.S.S.G.

§ 2L1.2(b)(1)(A) because Dominguez-Rodriguez "was [previously] convicted of a

felony drug trafficking offense and subsequently deported from the United

States."  Id. Vol. 2 at 54.  In support of this calculation, the PSR noted that on

March 23, 2012, Dominguez-Rodriguez was convicted in federal district court in

New Mexico of one count of possession with intent to distribute fifty grams and

more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1).  The PSR

described the underlying conduct:

> According to offense reports, the defendant agreed to sell four
> ounces of methamphetamine to a confidential informant.  The
> defendant subsequently met with the CI and was found in possession
> of 7.11 net grams of methamphetamine, 65.38 grams of
> methamphetamine (actual), and 8.22 net grams of cocaine.  Although
> the defendant indicated he was delivering the drugs on behalf of an
> individual known as Gallo, agents were unable to confirm that
> information.  Further, it is noted the defendant was the sole point of
> contact for the drug negotiations and he negotiated [the] sale,
> including the quantity and price of the methamphetamine.
> Additionally, at the time of his arrest, he was in possession of a large
> quantity of drugs as well as drug trafficking paraphernalia (digital
> scale), which suggests he was also responsible for packaging the
> drugs.  Other than his bare assertion, there is no indication the
> defendant was working under the direction of another.  Similarly,

4

there is no indication he was directing others in the drug trafficking offense.

Id. at 55. Lastly, the PSR noted that Dominguez-Rodriguez was sentenced to a term of imprisonment of twenty-four months for the conviction and was deported to Mexico on December 21, 2013.

After applying the downward adjustments outlined in the plea agreement, the PSR arrived at a total offense level of seventeen. That total offense level, combined with Dominguez-Rodriguez's criminal history category of II, resulted in an advisory Guidelines imprisonment range of twenty-seven to thirty-three months.

Dominguez-Rodriguez objected to the PSR's application of the 16-level increase to his base offense level. In support of his objection, Dominguez-Rodriguez argued that "[h]is prior conviction [wa]s not a match with the generic definition of a drug trafficking offense, and should therefore qualify only as an aggravated felony, warranting an eight-level increase." Id. Vol. 1 at 15. More specifically, Dominguez-Rodriguez argued that "[t]he term 'drug trafficking,'" as used in U.S.S.G. § 2L1.2(b)(1)(A)(i) (referring to "a drug trafficking offense"), "necessarily implies . . . commercial dealing." Id. at 17. But, Dominguez-Rodriguez argued, the offense "of possessing a controlled substance with intent to distribute it, under 21 U.S.C. § 841(a)(1), . . . does not require an intent to engage in a commercial transaction." Id. And Dominguez-Rodriguez argued that the

5

Supreme Court's decision in <u>Moncrieffe v. Holder</u>, 133 S. Ct. 1678 (2013) was supportive of his position.

The district court addressed Dominguez-Rodriguez's objection at the sentencing hearing. At the outset, the district court stated: "Interesting issue and I'm amazed there's not a definitive Tenth Circuit case that just flat out says here's what the deal is at this point." <u>Id.</u> Vol. 3 at 67. After hearing arguments from counsel, the district court ruled as follows:

> Well, you know, I guess this is one of those things where at first blush, you know, possession with the intent to distribute would appear to be trafficking but, again, you get down into the weeds a little bit and take a look at the analysis that I believe the Tenth Circuit has even suggested needs to be used in these kinds of cases. It's not enough just to look at the words but to look to some extent at the facts behind the words and this is the quandary to me in this case.

> Mr. Dominguez has waived his right to appeal. If I find in the Government's favor here, that means Mr. Dominguez doesn't get to take the issue up and we are stuck here. If, on the other hand, I find in Mr. Dominguez's favor on this issue, the Government can take the issue up and we may be able to get this question resolved about whether possession with the intent to distribute where there's no commerce really involved, no money, no consideration but rather just the offense in and of itself by its very nature constitutes a drug-trafficking crime within the meaning of the sentencing guidelines.

> And it's not that I necessarily think that either side has the better side of this case but I think the issue does need to be decided and as a result of that, I am going to adopt the position that's been asserted by Mr. Dominguez in this case and I encourage strongly the Government to appeal so that we can get this resolved and [defense counsel's] not going to have to write these kinds of briefs anymore and the Government's not going to have to write these kinds of briefs because all we'll have to do is cite to a Tenth Circuit case that will have taken up the issue.

6

So I am going to sustain the objection on the grounds basically stated by [defense counsel] in his brief. And so that being the case, we are dealing with an offense level of [nine], I believe, and a Criminal History Category of II.

Id. at 72-74.

Applying a total offense level of nine and a criminal history category of II, the district court arrived at an advisory Guidelines sentencing range of six to twelve months. The district court ultimately chose to sentence Dominguez-Rodriguez to a term of imprisonment of six months, and it imposed no term of supervised release.

After judgment was entered in the case, the government filed a timely notice of appeal.

## II

The government argues on appeal that the district court erred in refusing to apply the sixteen-level enhancement under § 2L1.2(b)(1)(A)(1). Aplt. Br. at 5. In support, the government argues that "[t]he federal offense of possession of a controlled substance with intent to distribute is a 'drug trafficking offense' as defined in the relevant application note to § 2L1.2." Aplt. Br. at 5. "Whether a conviction qualifies as a [drug trafficking offense] under § 2L1.2 is a matter of statutory interpretation that we . . . review de novo." United States v. Juarez-Galvan, 572 F.3d 1156, 1158 (10th Cir. 2009).

"Section 2L1.2 governs sentencing for crimes involving unlawful entry into

7

the United States." United States v. Castillo, 811 F.3d 342, 345 (10th Cir. 2015).

As an initial matter, it directs district courts to impose a base offense level of

eight. U.S.S.G. § 2L1.2(a). In turn, § 2L1.2 directs district courts to determine

"[i]f the defendant was deported, or unlawfully remained in the United States,

after" certain specified convictions, and, if so, to "[a]pply the [g]reatest"

applicable enhancement to the defendant's base offense level. Id. § 2L1.2(b)(1).

Two of those potential enhancements are relevant here:

> (A)     a conviction for a felony that is (i) a drug trafficking offense
>         for which the sentence imposed exceeded 13 months . . . ,
>         increase by **16** levels;
> * * *
> (C)     a conviction for an aggravated felony, increase by **8** levels[.]

Id. § 2L1.2(b)(1)(A), (C) (emphasis in original).

Application Note 1 to § 2L1.2 defines the phrase "drug trafficking offense"

in the following manner:

> "Drug trafficking offense" means an offense under federal, state, or
> local law that prohibits the manufacture, import, export, distribution,
> or dispensing of, or offer to sell a controlled substance (or a
> counterfeit substance) or the possession of a controlled substance (or
> a counterfeit substance) with intent to manufacture, import, export,
> distribute, or dispense.

Id. § 2L1.2 cmt. n.1(B)(iv). Application Note 3 in turn states that "[f]or purposes

of subsection (b)(1)(C), 'aggravated felony' has the meaning given that term in 8

U.S.C. [§] 1101(a)(43), without regard to the date of conviction for the

aggravated felony." Id. § 2L1.2 cmt. n.3(A). "The term 'aggravated felony,'" is

8

defined in 8 U.S.C. § 1101(a)(43)(B) to include "illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18)."

We have held that, "[t]o determine whether a prior conviction qualifies as a drug trafficking offense under § 2L1.2(b)(1)(A)(i), a district court must generally follow the categorical approach adopted" by the Supreme Court in Taylor v. United States, 495 U.S. 575, 600–02 (1990).  United States v. Castellanos-Barba, 648 F.3d 1130, 1132 (10th Cir. 2011).  "Under th[is] categorical approach, a court" does not look to the facts of the particular case, but rather "to the statute under which the defendant was convicted."  Id.  "If the statute encompasses a broad array of conduct, some of which would trigger the enhancement and some of which would not, the court must apply the 'modified categorical approach,' looking to 'reliable judicial records' to determine whether a predicate conviction was based on conduct triggering the enhancement."  Id. (quoting United States v. Torres-Romero, 537 F.3d 1155, 1158 (10th Cir. 2008)).

In this case, Dominguez-Rodriguez was previously convicted of possession with intent to distribute fifty grams and more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1).  That statute makes it "unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance."  21 U.S.C. § 841(a)(1).  It is undisputed that Dominguez-Rodriguez was convicted under the

9

portion of § 841(a)(1) that prohibits "possess[ion] with intent to . . . distribute . . . a controlled substance." Although this offense "has the same label—possession with intent to distribute—as an enumerated offense listed in the Guidelines definition of 'drug trafficking offense,'" that "does not automatically warrant application of the enhancement." United States v. Martinez-Lugo, 782 F.3d 198, 202 (5th Cir. 2015). "Instead, we assume that an enumerated offense [in the Guidelines definition of 'drug trafficking offense'] refers to the generic, contemporary meaning of that offense." Id. (quotation marks omitted). Under the categorical approach, we must "ensure that the elements of that generic enumerated offense are congruent with the elements of the defendant's prior offense." Id.

In determining "the generic, contemporary meaning of 'possession with intent to distribute,'" we begin by looking to the federal statute under which Dominguez-Rodriguez was previously convicted, 21 U.S.C. § 841(a)(1). See Martinez-Lugo, 782 F.3d at 203 n.18 (noting that "[t]he federal statute is . . . one source of the generical contemporary meaning of 'possession with intent to distribute.'"). The elements that must be established to support a conviction under 21 U.S.C. § 841(a)(1) for possession with intent to distribute are as follows: "(1) the defendant knowingly possessed the illegal drug; and (2) the defendant possessed the drug with the specific intent to distribute it." United States v. Carter, 130 F.3d 1432, 1440 (10th Cir. 1997) (quoting United States v.

10

Reece, 86 F.3d 994, 996 (10th Cir. 1996)).  Notably, Dominguez-Rodriguez does not point to any other sources, such as state definitions or the Model Penal Code, indicating that we should treat the generic, contemporary meaning of "possession with intent to distribute" differently than the federal offense.  See Martinez-Lugo, 782 F.3d at 203 n.18 (reaching similar conclusion with respect to offense as outlined in Georgia state statute).

Consequently, we conclude that the elements of Dominguez-Rodriguez's prior conviction are congruent with the elements of the generic offense of possession with intent to distribute enumerated in the definition of "drug trafficking offense" set forth in the commentary to U.S.S.G. § 2L1.2.  In other words, we conclude that Dominguez-Rodriguez's prior violation of § 841(a)(1) categorically constitutes a "drug trafficking offense" for purposes of § 2L1.2(b)(1)(A) and, as a result, there is no need to apply the modified categorical approach.  See United States v. Rodriguez-Escareno, 700 F.3d 751, 754 (5th Cir. 2012) (holding that 21 U.S.C. § 841(a)(1) is a federal drug trafficking offense as defined in Application Note 1 of § 2L1.2); United States v. Manzanares, 435 F. App'x 366, (5th Cir. 2011) ("a conviction under § 841 is a drug-trafficking offense for purposes of § 2L1.2(b)(1)(A)(i)").  And, as a result, we conclude that Dominguez-Rodriguez was subject to the sixteen-level enhancement set forth in U.S.S.G. § 2L1.2(b)(1)(A).

Dominguez-Rodriguez argues, however, that such analysis deviates "from

11

the ordinary analysis" mandated by both Supreme Court and Tenth Circuit precedent. Aplee. Br. at 3. More specifically, Dominguez-Rodriguez argues that "[t]his Court's precedents allow only a rigorous application of the categorical approach," id., and require reference to "generic 'drug trafficking offenses,'" id. at 4. Dominguez-Rodriguez in turn argues that the Supreme Court has determined that "the generic definition . . . of drug 'trafficking' implies 'some sort of commercial dealing' and some sort of distribution for 'remuneration.'" Id. at 9 (quoting Moncrieffe, 133 S. Ct. at 1693). "Thus," he argues, "an offense cannot accord with . . . the generic definition of drug 'trafficking,' when it involves non-commercial, non-remunerative, distribution." Id. at 10. Lastly, Dominguez-Rodriguez argues that "[c]onvictions under 21 U.S.C. § 841(a)(1) depart from th[is] generic definition[]" because they contain no remuneration requirement. Id. at 12. As a result, he argues, "[t]he district court . . . correctly determined that 21 U.S.C. § 841(a)(1) does not accord with th[e] generic definition of 'trafficking' because it lacks the remuneration requirement." Id. at 13.

Because Dominguez-Rodriguez's argument derives principally from the Supreme Court's recent decision in Moncrieffe, it is necessary for us to analyze in some detail what was at issue in Moncrieffe. The central statute at issue in Moncrieffe was the Immigration and Nationality Act (INA), 66 Stat. 163, 8 U.S.C. § 1101 et seq. Under the INA, "a noncitizen who has been convicted of an 'aggravated felony' may be deported from this country" and is prohibited from

12

obtaining "discretionary relief from removal" from the Attorney General. 133 S. Ct. at 1682. "The INA defines 'aggravated felony' to include a host of offenses," including "illicit trafficking in a controlled substance." Id. at 1683 (quoting 8 U.S.C. § 1101(a)(43)). The INA does not define the term "illicit trafficking in a controlled substance," but does "state[] that it 'includ[es] a drug trafficking crime (as defined in section 924(c) of title 18).'" Id. (quoting 8 U.S.C. § 1101(a))(43)(B)). "In turn, 18 U.S.C. § 924(c)(2) defines 'drug trafficking crime,'" in pertinent part, "to mean 'any felony punishable under the Controlled Substances Act.'" Id. "The upshot is that a noncitizen's conviction of an offense that the Controlled Substances Act (CSA) makes punishable by more than one year's imprisonment will be counted as an 'aggravated felony' for immigration purposes." Id.

The petitioner in Moncrieffe was "a Jamaican citizen who came to the United States legally . . . when he was three" and who, at age twenty-six, "pleaded guilty [in Georgia state court] to possession of marijuana with intent to distribute" after "police found 1.3 grams of marijuana in his car" during a traffic stop. Id. "[T]he Federal Government sought to deport" petitioner, "reason[ing] that possession of marijuana with intent to distribute [wa]s an offense under the CSA, 21 U.S.C. § 841(a), . . . and thus an aggravated felony." Id. "An Immigration Judge agreed and ordered [petitioner] removed." Id. The petitioner appealed, relying on 21 U.S.C. § 841(b)(4), "a provision that, in effect, makes

13

marijuana distribution punishable only as a misdemeanor if the offense involves a small amount of marijuana for no remuneration." Id. After the Fifth Circuit denied the petitioner's appeal, the Supreme Court

> granted certiorari . . . to resolve a conflict among the Courts of Appeals with respect to whether a conviction under a statute that criminalizes conduct described by both § 841's felony provision and its misdemeanor provision, such as a statute that punishes all marijuana distribution without regard to the amount of remuneration, is a conviction for an offense that proscribes conduct punishable as a felony under the CSA."

Id. at 1684 (internal quotation marks omitted).

The Supreme Court began by noting that it "generally employ[s] a 'categorical approach' to determine whether [a] state offense is comparable to an offense listed in the INA." Id. "Under this approach," the Court explained, it "look[s] not to the facts of the particular case, but instead to whether the state statute defining the crime of conviction categorically fits within the 'generic' federal definition of a corresponding aggravated felony." Id. (internal quotation marks omitted). "By 'generic," the Court further explained, it "mean[s] the offenses must be viewed in the abstract, to see whether the state statute shares the nature of the federal offense that serves as a point of comparison." Id. "Accordingly," the Court stated, "a state offense is a categorical match with a generic federal offense only if a conviction of the state offense necessarily involved . . . facts equating to [the] generic [federal offense]." Id. (quotation marks omitted) (alterations in original). The Court also explained that in

14

conducting this analysis, it "must presume that the conviction rested upon [nothing] more than the least of th[e] acts criminalized, and then determine whether even those acts are encompassed by the generic federal offense." Id. (quotation marks omitted) (alterations in original).

Lastly, the Court outlined two "qualification[s]" to this general rule. "First," the Court noted, if the "state statute[]" at issue "contain[s] several different crimes, each described separately, . . . a court may determine which particular offense the noncitizen was convicted of by examining the" relevant court records. Id. "Second," the Court stated, the "focus on the minimum conduct criminalized by the state statute is not an invitation to apply legal imagination to the state offense." Id. at 1684–85 (quotation marks omitted). Instead, the Court stated, "there must be a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." Id. at 1685 (quotation marks omitted).

Applying these principles to the facts before it, the Court began by concluding that "the categorical approach applie[d]" because the aggravated felony of "illicit trafficking in a controlled substance," as employed in the INA, "is a generic crim[e]." Id. at 1685 (quotation marks omitted) (alteration in original). The Court in turn noted that the petitioner was convicted under a Georgia statute that made it a crime to possess with intent to distribute marijuana. Id. As a result, the Court noted, its task was to "determine whether possession of

15

marijuana with intent to distribute is 'necessarily' conduct punishable as a felony under the CSA." Id. The Court in turn noted that "the fact of a conviction for possession with intent to distribute marijuana, standing alone, does not reveal whether either remuneration or more was involved" because "Georgia prosecutes this offense when a defendant possesses only a small amount of marijuana, and . . . 'distribution' does not require remuneration." Id. at 1686 (citations omitted). As a result, the Court concluded, the petitioner's "conviction could correspond to either the CSA felony [which required remuneration] or the CSA misdemeanor [which did not require remuneration]." Id. at 1687. And, the Court concluded, "[a]mbiguity on this point means that the conviction did not 'necessarily' involve facts that correspond to an offense punishable as a felony under the CSA." Id. In conclusion, the Court determined that "[u]nder the categorical approach, . . . [the petitioner] was not convicted of an aggravated felony." Id.

Dominguez-Rodriguez argues that, in determining whether his prior conviction constituted a "drug trafficking offense" for purposes of U.S.S.G. § 2L1.2, we are bound to apply "the generic definition of drug 'trafficking,'" outlined in Moncrieffe. Aplee. Br. at 10. And, he argues, that "generic definition . . . of drug 'trafficking' implies 'some sort of commercial dealing' and some sort of distribution for 'remuneration.'" Id. at 9 (quoting Moncrieffe, 133 S. Ct. at 1693).

Dominguez-Rodriguez's argument, however, ignores the fact that his case

16

differs fundamentally from Moncrieffe.  In Moncrieffe, the Supreme Court's task was to determine whether the petitioner's crime qualified as an "aggravated felony" for purposes of the INA.  In this case, in contrast, our task is to determine whether Dominguez-Rodriguez's prior conviction qualified as a "drug trafficking offense" under U.S.S.G. § 2L1.2(b)(1)(A).  Notably, § 2L1.2 includes its own definition of "drug trafficking offense," and that definition differs from the definition of "aggravated felony" that was at issue in Moncrieffe.  See Martinez-Lugo, 782 F.3d at 204 (reaching same conclusion).  In other words, the Sentencing Commission has supplied a definition of "drug trafficking offense" that district courts and we must follow.  As a result, that obviates the need for us to determine the meaning of the phrase "drug trafficking offense" and, in doing so, to look to Moncrieffe.  Indeed, the problem with Dominguez-Rodriguez's approach is that it ignores, and would render a nullity, the specific definition of "drug trafficking offense" that was adopted by the Sentencing Commission for purposes of § 2L1.2.[1]

---

[1]  We note that Application Note 3 to U.S.S.G. § 2L1.2 defines the term "aggravated felony" in precisely the same manner that the term is defined under the INA.  See U.S.S.G. § 2L1.2 cmt. n.3(A) ("For purposes of subsection (b)(1)(C), 'aggravated felony' has the meaning given that term in 8 U.S.C. 1101(a)(43), without regard to the date of conviction for the aggravated felony.").  Thus, the analysis in Moncrieffe would presumably apply to the determination of whether a defendant's prior conviction constituted an "aggravated felony" for purposes of § 2L1.2(b)(1)(C).  And, as the Fifth Circuit noted in Martinez-Lugo, it is conceivable that a prior state conviction could qualify as a "drug trafficking

(continued...)

17

## III

We REMAND to the district court with instructions to VACATE Dominguez-Rodriguez's sentence and to resentence in a manner consistent with this opinion.

---

[1](...continued)
offense" and a resulting sixteen-level enhancement under § 2L1.2(b)(1)(A), but not qualify as an "aggravated felony" and a resulting eight-level enhancement under § 2L1.2(b)(1)(C). 782 F.3d at 204. But that potential anomaly is not before us in this appeal. As we have explained, Dominguez-Rodriguez's prior conviction qualifies him for the sixteen-level enhancement outlined in § 2L1.2(b)(1)(A). Because that is the "[g]reatest" possible enhancement under § 2L1.2(b)(1), the district court was required to impose it.