**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 22, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

LUIS MARTIN LOPEZ-JACOBO,

    Defendant - Appellant.

No. 15-2182
(D.C. No. 2:15-CR-01969-JBM-1)
(D.N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **EBEL** and **LUCERO**, Circuit Judges.
_____

Luis Lopez-Jacobo appeals the district court's application of a sixteen-level

sentencing enhancement.  Exercising jurisdiction under 18 U.S.C. § 3742, we affirm.

**I**

In 2000, Lopez-Jacobo was charged in Illinois state court of possessing with

intent to manufacture or deliver one gram or more but less than fifteen grams of any

substance containing cocaine, or an analog thereof, in violation of 720 Ill. Comp.

Stat. 570/401(c)(2) (2000).[1]  He pled guilty and was sentenced to five-and-a-half

_____

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] All subsequent references to § 570/401(c)(2) will refer to the 2000 version of
the statute.

years' imprisonment. Upon the completion of his sentence, he was removed from the United States.

Lopez-Jacobo pled guilty to reentry of a removed alien in 2015. His pre-sentence investigation report ("PSR") recommended a sixteen-level enhancement under U.S.S.G. § 2L1.2(b)(1)(A)(i) because his prior Illinois conviction was for a "drug trafficking offense." The Application Notes to the Guidelines define "drug trafficking offense" as "an offense under federal, state, or local law that prohibits the manufacture, import, export, distribution, or dispensing of, or offer to sell a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." § 2L1.2, app. n.1(B)(iv).

Lopez argued his prior conviction was not a drug trafficking offense because, unlike the generic definition of drug trafficking, a conviction under the Illinois statute does not require intent to engage in a commercial transaction. He also argued the statute did not qualify because Illinois allows for a conviction for possession of precursor ingredients or by-products of a controlled substance, even absent possession of a usable final substance. The district court rejected these arguments, applied the sixteen-level enhancement, and imposed a sentence of 46 months' imprisonment. Lopez-Jacobo appeals his sentence.

**II**

We review de novo a district court's determination that a prior offense merits a sentencing enhancement under § 2L1.2. United States v. Torres-Romero, 537 F.3d

2

1155, 1157 (10th Cir. 2008). "To determine whether a prior conviction qualifies as a drug trafficking offense under § 2L1.2(b)(1)(A)(i), a district court must generally follow the categorical approach." United States v. Dominguez-Rodriguez, 817 F.3d 1190, 1194 (10th Cir. 2016) (quotation and alteration omitted). Under the categorical approach, "a court does not look to the facts of the particular case, but rather to the statute under which the defendant was convicted." Id. (quotation omitted).

If a defendant was convicted under a "divisible statute" that "sets out one or more elements of the offense in the alternative," a sentencing court may look to certain documents to determine which alternative formed the basis of the prior conviction. Descamps v. United States, 133 S. Ct. 2276, 2281-82 (2013). This "modified approach merely helps implement the categorical approach when a defendant was convicted of violating a divisible statute." Id. at 2285. But under the modified categorical approach, the analysis remains an "elements-based one," id. at 2293, and a court may not look to the "facts underlying the prior convictions," id. at 2287.

**A**

In determining whether a conviction triggers an enhancement under § 2L1.2(b)(1)(A)(i), "we assume that an enumerated offense in the Guidelines definition of 'drug trafficking offense' refers to the generic, contemporary meaning of that offense." Dominguez-Rodriguez, 817 F.3d at 1195 (quotation and alteration omitted). We must "ensure that the elements of that generic enumerated offense are congruent with the elements of the defendant's prior offense." Id.

3

Lopez-Jacobo argues the generic definition of drug trafficking requires intent to engage in a commercial transaction. In particular, he notes that in the context of the Immigration and Naturalization Act ("INA"), the Supreme Court determined that the generic definition of "illicit trafficking in a controlled substance" implies "some sort of commercial dealing" for "remuneration." Moncrieffe v. Holder, 133 S.Ct. 1678, 1693 (2013) (quotation omitted). Because the Illinois statute does not contain a remuneration element, Lopez-Jacobo contends it does not qualify for the enhancement.

We rejected a virtually identical argument in Dominguez-Rodriguez, 817 F.3d at 1195-96. Specifically, we held that the generic definition of drug trafficking only requires knowing possession and intent to distribute. Id. at 1195. Moreover, we expressly rejected the plaintiff's argument that under Moncrieffe the generic definition required remuneration. Id. at 1196-99. "In Moncrieffe, the Supreme Court's task was to determine whether the petitioner's crime qualified as an 'aggravated felony' for purposes of the INA." Id. at 1199. In Dominguez-Rodriguez, in contrast, our task was "to determine whether Dominguez-Rodriguez's prior conviction qualified as a 'drug trafficking offense' under U.S.S.G. § 2L1.2(b)(1)(A)." Id. The difference is material, we observed, because unlike the INA, § 2L1.2 "includes its own definition of 'drug trafficking offense'" which "obviates the need for us to . . . look to Moncrieffe." Id. Thus, we held a prior conviction does not need to contain a commercial or remunerative element to trigger an enhancement under § 2L1.2(b)(1)(A)(i). Dominguez-Rodriguez 817 F.3d at 1199.

4

Under <u>Dominguez-Rodriguez</u>, Lopez-Jacobo's argument for a remuneration element fails.

**B**

Lopez-Jacobo contends that § 570/401(c)(2) criminalizes conduct broader than that which would be criminalized as a generic "drug trafficking offense." He relies on <u>People v. Haycraft</u>, 811 N.E.2d 747 (Ill. App. Ct. 2004), for the proposition that Illinois would prosecute someone for "possession of a controlled substance" when that person possessed only the innocent precursors to a controlled substance. Specifically, Lopez-Jacobo relies on the Illinois court's language that "[m]ethamphetamine is its ingredients, i.e., anhydrous ammonia, pseudoephedrine, and lithium, combined in a mixture, whether cooked to its final, marketable form or not." <u>Id.</u> at 759 (italics omitted). The court observed that the "defendant combined the methamphetamine ingredients into the container; thus, the mixture in the container constituted a 'substance containing methamphetamine.'" <u>Id.</u> Lopez-Jacobo asserts this language establishes that Illinois could have prosecuted him for possession of innocent precursors. But Lopez-Jacobo stretches <u>Haycraft</u> too far. The <u>Haycraft</u> court noted that "methamphetamine was present in the substances," and samples of the substance were "later identified by a forensic chemist as methamphetamine." <u>Id.</u> at 753. Therefore, Haycraft was not prosecuted for possession only of the innocent precursors—he actually possessed methamphetamine.

Lopez-Jacobo similarly suggests that under <u>People v. McCarty</u>, 858 N.E.2d 15 (Ill. 2006), Illinois' statute criminalizes possession of precursor ingredients for all

5

controlled substances.[2] We find this argument unconvincing for several reasons. Importantly, McCarty did not hold that any single ingredient is itself a controlled substance; rather, it held a "byproduct of the methamphetamine manufacturing process" that "tested positive for the presence of methamphetamine" qualifies as a "substance containing methamphetamine" even if it is not usable. 858 N.E.2d at 25-26; see also Haycraft, 811 N.E.2d at 759 (noting a "forensic chemist later identified [the mixture at issue] as methamphetamine").[3] Thus, the Illinois statute does not criminalize purely innocuous precursor ingredients.

Further, the federal Controlled Substances Act ("CSA") accords with Illinois' approach. See United States v. Martinez-Lugo, 782 F.3d at 198, 203 n.18 (5th Cir. 2015) ("The federal statute is . . . one source of the generic, contemporary meaning of 'possession with intent to distribute.'"). As we have previously observed, "[o]ne searches in vain to find the words 'marketable,' 'usable,' or 'consumable' in the plain language" of the CSA because "Congress did not enact these concepts into the statutory scheme." United States v. Richards, 87 F.3d 1152, 1158 (10th Cir. 1996) (en banc). Instead, Congress criminalized possession of mixtures "containing a

---

[2] At oral argument, Lopez-Jacobo argued for the first time that possession of precursors to a cocaine analog, specifically, would be prohibited by the Illinois statute. Any argument specific to cocaine analogs is waived. Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 679 (10th Cir. 1998) ("Arguments inadequately briefed in the opening brief are waived.").

[3] That a compound must test positive for a controlled substance finds support in the fact that the statute at issue provided separate penalties for possession of "any methamphetamine manufacturing chemical" with the intent to manufacture methamphetamine. § 570/401(a)(6.6) (2000).

6

detectable amount of a controlled substance." Id. The Richards case concerned essentially the same substance Lopez-Jacobo contends would qualify as an offense in Illinois but not generically: a liquid solution used in the process of manufacturing methamphetamine. Id. at 1153.[4] We held that under the federal definition, "[l]iquid byproducts containing methamphetamine" qualify. Richards, 87 F.3d at 1158.

Moreover, although Lopez-Jacobo suggests that several states have expressly held that a person cannot possess a controlled substance unless it is in a "usable" form, three of the four cases he cites stand for the proposition that a person cannot possess a controlled substance unless it is in usable quantities, not in usable form. See State v. Donovan, 568 P.2d 1107, 1110 (Ariz. Ct. App. 1977); Harbison v. State, 790 S.W.2d 146, 151 (Ark. 1990); People v. Ormiston, 105 Cal. App. 4th 676, 682 (2003). Lopez-Jacobo claims that these cases nevertheless support his position. But we read them as silent as to the possibility that possession of a large quantity of a mixture containing a controlled substance might constitute an offense, even if not yet in a usable form. For example, Harbison observed that possessing less than usable quantities is not criminalized because "it cannot contribute to future . . . use of or trafficking in drugs." 790 S.W.2d at 151. In contrast, possessing large quantities of

---

[4] Lopez-Jacobo argues that Richards is not informative because it held that under the CSA the weight of a controlled substance attributable to a defendant includes non-controlled substances intermixed with controlled substances, whereas McCarty does not require that a controlled substance be present. Again, we reject Lopez-Jacobo's reading of McCarty. Although McCarty did not require possession of final, usable methamphetamine, it squarely considered possession of liquids which "tested positive for the presence of methamphetamine." 858 N.E.2d at 26. Thus, a controlled substance was present.

uncooked methamphetamine can certainly contribute to future trafficking. These cases thus do not stand for the proposition for which Lopez-Jacobo cites them, and he does not provide additional support for his interpretation of the generic definition.[5]

We conclude that Illinois' prohibition on possession of mixtures containing detectable amounts of controlled substances is not broader than the generic definition of controlled substances. We thus reject Lopez-Jacobo's argument that the district court improperly applied the sixteen-level enhancement.[6]

## C

Finally, Lopez-Jacobo contends the district court impermissibly considered the facts underlying his prior conviction. But he misconstrues the district court's analysis. The district court looked to the specific subsection of the Illinois statute under which Lopez-Jacobo was previously convicted, § 570/401(c)(2), which prohibits possession with intent to manufacture or deliver "1 gram or more but less than 15 grams of any substance containing cocaine, or an analog thereof." This application of the modified categorical approach was proper. See Descamps, 133 S.

---

[5] To the extent Lopez-Jacobo suggests that Illinois criminalizes possession of unmeasurable quantities of controlled substances, we note that § 570/401(c)(2) required possession of at least one gram of cocaine or cocaine analog. Thus, an element of his prior conviction was possession of a measurable amount of a controlled substance. See Richardson v. United States, 526 U.S. 813, 817-18 (1999) (an element of a crime is that which "a jury . . . [must] unanimously find[] that the Government has proved").

[6] Lopez-Jacobo argues that the government waived any argument that the Illinois definition of controlled substances accords with the generic definition. But we may "affirm a lower court's ruling on any grounds adequately supported by the record." United States v. Mabry, 728 F.3d 1163, 1166 (10th Cir. 2013).

Ct. at 2281 (courts may look to indictment in applying modified categorical approach).

The Illinois statute contains alternative elements rather than alternative factual means by which to satisfy the elements of the offense. See Mathis v. United States, No. 15-6092, slip op. at 17 (U.S. June 23, 2016). "If statutory alternatives carry different punishments, then . . . they must be elements." Id. Because Illinois' statutory alternatives carry different punishments, the subsections reflect alternative elements. Compare § 570/401(a) (punishing possession of certain drugs and quantities as Class X felonies), with § 570/401(c) (punishing possession of certain substances as a Class 1 felonies); see also 730 Ill. Comp. Stat. 5/5-4.5-25, -30 (sentencing provisions by felony class). Moreover, "an indictment . . . could indicate, by referencing one alternative term to the exclusion of all others, that the statute contains a list of elements." Mathis, slip op. at 18. The indictment specifically charged a violation of subsection (c)(2).

## III

The district court's application of the sixteen-level sentencing enhancement is **AFFIRMED**.

Entered for the Court

Carlos F. Lucero
Circuit Judge

9