**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

JESUS DOMINGO MARTINEZ-CRUZ,

     Defendant - Appellant.

No. 15-2167

_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 2:15-cr-00902-RB-2)**
_____

Caleb Kruckenberg, Assistant Federal Public Defender, Office of the Federal Public Defender, Las Cruces, New Mexico, for Defendant-Appellant.

James R.W. Braun, Assistant United States Attorney (Damon P. Martinez, United States Attorney, with him on the brief), Office of the United States Attorney, Las Cruces, New Mexico, for Plaintiff-Appellee.

_____

Before **TYMKOVICH**, Chief Judge, **EBEL**, and **LUCERO**, Circuit Judges.
_____

**EBEL**, Circuit Judge.
_____

## INTRODUCTION

This case involves one narrow, but complicated, issue. Jesus Domingo

Martinez-Cruz challenges the district court's twelve-level enhancement of his

sentence under United States Sentencing Guideline (the Guidelines) § 2L1.2 Application Note 5 for his previous conviction for Conspiracy to Possess a Controlled Substance with Intent to Distribute in Violation of 21 U.S.C. § 846. Martinez-Cruz contends that this was error, because Application Note 5 uses the term "conspiring" without defining it, thus the categorical approach should apply. Because the generic definition of conspiracy requires an overt act while his conviction under 21 U.S.C. § 846 did not, Martinez-Cruz argues, his previous conviction is not a categorical match for the generic definition of "conspiracy" and he should therefore receive only an eight-level enhancement for a prior aggravated felony conviction.

Having jurisdiction under 18 U.S.C. § 3742(a)(2), we agree with Martinez-Cruz. We therefore REVERSE and REMAND for resentencing consistent with this opinion.

## BACKGROUND FACTS

In January 2015, United States Border Patrol agents found Jesus Domingo Martinez-Cruz and two associates walking along Interstate-10 in New Mexico. The men admitted that they had been carrying backpacks loaded with contraband. Martinez-Cruz admitted that he was a Mexican citizen and did not have permission to be in the United States. The backpacks that Martinez-Cruz and his associates were carrying contained 69.12 kilograms of marijuana.

Martinez-Cruz had previously been removed from the United States in November 2014. He was removed following a federal conviction for conspiracy to

2

possess with intent to distribute fifty kilograms or more of marijuana, in violation of 21 U.S.C. § 846. He was caught committing a similar act to the one at issue in this case (i.e., illegally entering the United States and walking with associates along a highway carrying backpacks filled with marijuana). He received an eight-month sentence at that time.

In this case, Martinez-Cruz pled guilty to three counts: (1) conspiracy to possess with intent to distribute fifty kilograms or more of marijuana in violation of 21 U.S.C. § 846; (2) possession with intent to distribute fifty kilograms or more of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C); and (3) reentering the United States after having been removed in violation of 8 U.S.C. §§ 1326(a) and (b).

The presentence report (PSR) recommended an adjusted offense level of sixteen for the drug counts. The PSR recommended a base level of eight for the immigration violation, pursuant to U.S.S.G. § 2L1.2. The PSR then enhanced his immigration offense level by twelve levels for having been previously convicted of a felony drug trafficking conspiracy for which the penalty was less than thirteen months' imprisonment, pursuant to U.S.S.G. § 2L1.2(b)(1)(B) and its Application Note 5. Martinez-Cruz objected to that enhancement, and that enhancement forms the sole issue in this appeal. The district court overruled Martinez-Cruz's objection after hearing argument from both parties. After adjusting for multiple counts and acceptance of responsibility, Martinez-Cruz's total offense level was nineteen. With a criminal history category of II, his advisory guideline sentencing range was 33 to 41 months in prison. The district court sentenced Martinez-Cruz to 33 months in

3

prison, followed by a three-year term of supervised release.  Martinez-Cruz timely appealed.

## STANDARD OF REVIEW

The Tenth Circuit reviews *de novo* whether a prior offense triggers a sentencing enhancement under U.S.S.G. § 2L1.2(b).  United States v. Castillo, 811 F.3d 342, 345 (10th Cir. 2015).

## LEGAL DISCUSSION

U.S.S.G. § 2L1.2(b)(1)(B), the guideline for "Unlawfully Entering or Remaining in the United States," imposes an additional twelve-level enhancement if the defendant had "a conviction for a felony drug trafficking offense for which the sentence imposed was 13 months or less."  That conviction may arise from "an offense under federal, state, or local law."  U.S.S.G. § 2L1.2 Application Note 1(B)(iv).  Alternatively, the guideline imposes an eight-level enhancement if the defendant has "a conviction for an aggravated felony."  Application Note 5 to § 2L1.2 states, "Prior convictions of offenses counted under subsection (b)(1) include the offenses of aiding and abetting, *conspiring*, and attempting, to commit such offenses."  (emphasis added).  The Application Notes do not further define "conspiring."[1]  Therefore, this opinion will focus on the generic definition of the term "conspiring."

Martinez-Cruz argues that his twelve-level enhancement was unwarranted because, under Taylor v. United States, 495 U.S. 575, 600-02 (1990), his prior

---

[1] For ease of reading, we will refer to "conspiracy" rather than "conspiring."

4

federal conviction for Conspiracy to Possess a Controlled Substance with Intent to Distribute in Violation of 21 U.S.C. § 846 was not categorically a "drug trafficking offense" because conspiracy under § 846 does not require proof of an overt act— which, Martinez-Cruz argues, is part of the generic definition of "conspiracy" to which § 2L1.2 Application Note 5 refers.[2]

However, this is an unsettled issue in the Tenth Circuit, and other circuits to address the issue have disagreed with Martinez-Cruz's proposed analysis. There are two similar—but varying—strands of precedent on this subject in the Tenth Circuit. This case thus presents a legal conundrum that we must resolve.

The analysis of this issue will proceed in four parts: (1) the relevant Tenth Circuit precedent concerning the Guidelines and categorical approach generally; (2) Martinez-Cruz's proposed analysis and result; (3) the government's proposed analysis and result (including other circuits' analyses of this issue); and (4) why we adopt Martinez-Cruz's proposed analysis.

> a. *Tenth Circuit precedent concerning the Guidelines and categorical approach*

There are two major strands of precedent in the Tenth Circuit involving the Guidelines and categorical approach. The first emphasizes the Taylor categorical approach, the second emphasizes the Sentencing Commission's intent. Recent precedent, however, focuses on the Taylor categorical approach.

---

[2] Martinez-Cruz concedes that, if we find that the district court erred in applying the twelve-level enhancement, he will still be subject to an eight-level enhancement for his prior conviction of an aggravated felony.

The Tenth Circuit recently decided a case that outlines the process for determining whether a previous federal drug conviction qualifies for enhancement under the immigration guideline, U.S.S.G. § 2L1.2(b)(1). In United States v. Dominguez-Rodriguez, 817 F.3d 1190, 1194 (10th Cir. 2016), the court held that "[t]o determine whether a prior conviction qualifies as a drug trafficking offense under § 2L1.2(b)(1)(A)(i),[3] a district court must generally follow the categorical approach adopted by the Supreme Court in Taylor v. United States, 495 U.S. 575, 600-02 (1990)." (quotations and citations omitted, alterations in original).

"Under th[is] categorical approach, a court does not look to the facts of the particular case, but rather to the statute under which the defendant was convicted" to determine if it qualifies as a drug trafficking offense under § 2L1.2(b)(1). Dominguez-Rodriguez, 817 F.3d at 1194 (quotations omitted, alterations in original). Even though an offense may have "the same label . . . as an enumerated offense listed in the Guidelines definition," that by itself "does not automatically warrant application of the enhancement." Id. at 1195 (quotations omitted). Instead, the court assumes that an enumerated offense in the Guidelines "refers to the generic, contemporary meaning of the offense." Id. "Under the categorical approach, we must ensure that the elements of that generic enumerated offense are congruent with the elements of the defendant's prior offense." Id. (quotations and citations omitted).

---

[3] Our case here involves U.S.S.G. § 2L1.2(b)(1)(B) instead of subsection (b)(1)(A) (at issue in Dominguez-Rodriguez), but those subsections are the same for the purposes of this appeal (the only difference between those two subsections is how long the defendant had been sentenced for the previous crime).

6

To determine the "generic, contemporary meaning" of a crime enumerated in the Guidelines, the court begins "by looking to the federal statute under which [the defendant] was previously convicted." Id. at 1195 (also noting that "the federal statute is one source of the generic[] contemporary meaning" for a crime). The court also examines whether the statute of conviction "roughly corresponds to the definitions of the crime in a majority of the States' criminal codes, as well as prominent secondary sources, such as criminal law treatises and the Model Penal Code." United States v. Garcia-Caraveo, 586 F.3d 1230, 1233 (10th Cir. 2009) (addressing state law convictions) (citations and alterations omitted); see Dominguez-Rodriguez, 817 F.3d at 1195 (noting that the court did not look to sources beyond federal law when reviewing a federal conviction because the appellant did not argue that other sources were relevant when determining the generic definition of a crime). Here, our focus is on the word "conspiring" and its generic definition because Martinez-Cruz's prior conviction under 21 U.S.C. § 846 was for *conspiracy* to possess with intent to distribute controlled substances, rather than just possession with intent to distribute.

Although Martinez-Cruz's conviction was federal and the Guidelines are also federal, we must include state law in the generic crime analysis because the Guidelines uniformly count convictions "under federal, state, or local law." U.S.S.G. § 2L1.2 Application Note 1(B)(iv). Considering all sources of conspiracy law in the inquiry of the nature of a previous conviction—even for a prior federal conspiracy conviction—will ensure that different conspiracy convictions are not treated

7

differently.  Similarly, we focus on the word "conspiring" in its general sense and not specifically "conspiracy to possess with intent to distribute controlled substances" because the term "conspiring" in U.S.S.G. § 2L1.2 Application Note 5 applies to a wide range of crimes beyond just drug trafficking (including "aggravated felony" and "any other felony").

We also acknowledge prior Tenth Circuit law holding that, "Ultimately, our task in interpreting the Guidelines is to determine the intent of the Sentencing Commission."  United States v. Rivera-Oros, 590 F.3d 1123, 1129 (10th Cir. 2009).  The Tenth Circuit interprets the Guidelines "as though they were a statute or court rule" and assumes that the Sentencing Commission "adopts uniform judicial interpretations given a particular word, phrase, or provision."  United States v. O'Flanagan, 339 F.3d 1229, 1235 (10th Cir. 2003) (citations and quotations omitted).  "Where the language of the Guidelines is clear and unambiguous, it must be followed except in the most extraordinary situation where [it] leads to an absurd result contrary to clear legislative intent."  United States v. Holbert, 285 F.3d 1257, 1260 (10th Cir. 2002) (quotations and citations omitted).  Within § 2L1.2 there are examples of when the Sentencing Commission clearly intended that the analysis stop at a federal statute.  As just one of several examples, Application Note 1(B)(v) specifically defines "firearm offense" to cover violations of 18 U.S.C. §§ 921, 841(c), 844(h), 924(c), and 929(a).  But this narrow approach is not available to us because the reference to "conspiracy" in § 2L1.2 Application Note 5 is not narrowed nor defined by reference to any particular federal statutes.

8

Following the prescribed process in our precedent of Dominguez-Rodriguez is supportive of Martinez-Cruz's position. But, other circuits have suggested that the Sentencing Commission intended that § 2L1.2 Application Note 5 include federal conspiracy convictions under 21 U.S.C. § 846. However, because we find that the intent of the Sentencing Commission is not clear, we adopt Martinez-Cruz's arguments and follow prior Tenth Circuit precedent in Dominguez-Rodriguez in applying the categorical approach.

  b. *Martinez-Cruz's conviction does not match the generic definition of "conspiracy"*

First, Martinez-Cruz argues that his conviction is not a categorical match for the generic definition of "conspiracy" enumerated in U.S.S.G. § 2L1.2 Application Note 5 because the generic definition of conspiracy requires an overt act whereas the statute he had previously been convicted of—21 U.S.C. § 846—has been held not to require proof of an overt act for a conspiracy conviction. United States v. Shabani, 513 U.S. 10 (1994) (holding that, in the context of a conspiracy conviction under § 846, "the Government need not prove the commission of any overt acts in furtherance of the conspiracy").[4]

Second, Martinez-Cruz points to the Ninth Circuit case of United States v. Garcia-Santana, 774 F.3d 528 (9th Cir. 2014), which surveyed the states, Model Penal Code (MPC), criminal law treatises, and federal law to determine the generic

---

[4] To avoid Constitutional problems, the Court held that although "the law does not punish criminal thoughts, in a criminal conspiracy the criminal agreement itself is the *actus reus*." Shabani, 513 U.S. at 10 (emphasis in original).

9

definition of conspiracy. The Ninth Circuit first cited <u>Taylor</u> for the proposition that "[t]he generic definition of an offense roughly correspond[s] to the definitions of [the offense] in a majority of the States' criminal codes." <u>Garcia-Santana</u>, 774 F.3d at 534 (citing <u>Taylor</u>, 495 U.S. at 589). Then, the Ninth Circuit noted that "A survey of state conspiracy statutes reveals that the vast majority demand an overt act to sustain conviction. By our count, thirty-six states do so; if the District of Columbia, Guam, Puerto Rico, and the Virgin Islands are included, then the tally rises to forty of fifty-four jurisdictions." <u>Id.</u> at 534-35. These state statutes, it should be noted, were general conspiracy statutes—i.e., they applied generally to all crimes within the state. <u>Id.</u>

The Ninth Circuit, in <u>Garcia-Santana</u>, also noted that the federal government's general conspiracy statute (18 U.S.C. § 371) requires an overt act and major treatises support an overt act requirement for conspiracy convictions. <u>Id.</u> at 535-36. Thus, the Ninth Circuit held that the generic definition of conspiracy requires an overt act. <u>Id.</u> at 537. The Ninth Circuit's survey of the law is persuasive.

> c. *The government proposes that the Panel should not apply the categorical approach and argues that generic conspiracy does not require an overt act*

The government makes two arguments: (1) that we should not apply the categorical approach here at all; and (2) if we apply the categorical approach, we should hold that the generic definition of conspiracy does not require an overt act. In support, the government cites to several cases from other circuits. Although case law

from other circuits has persuasive weight, the analyses in the government's cited cases do not persuade us because they offer little supportive analysis.

In the first case, United States v. Pascacio-Rodriguez, 749 F.3d 353 (5th Cir. 2014), the Fifth Circuit held that a prior conviction for conspiracy to commit murder did not require proof of an overt act to qualify for a sentencing enhancement under Application Note 5 of U.S.S.G. § 2L1.2 (the same Application Note and Guidelines section at issue in this case). But in that case, the Fifth Circuit was unclear whether it needed to apply the categorical approach to "conspiracy" in the Guidelines at all:

> It is not clear, however, whether this court's precedent requires that we apply the categorical approach in discerning the elements of a conspiracy, as that term is used in § 2L1.2(b)(1)(A)(ii). . . . For us, nonetheless, to search for a generic meaning of 'conspiracy' by employing a doctrine generally used to determine whether a state conviction is of an enumerated crime, would only becloud what is clear from the Guideline itself.

Id. at 366-67.

The Fifth Circuit performed the generic-crime analysis anyway. It held that the generic crime of conspiracy did not require an overt act and there may not even be a generic definition of "conspiracy" because thirty-four states require an overt act, but sixteen do not—and many federal statutes do not. Id. at 363-66. The Fifth Circuit counted twenty-four federal statutes that require an overt act and one hundred and forty-two that do not.[5]

---

[5] It should be noted that while some of the statutes not requiring overt acts are major federal statutes, including RICO and conspiracy to commit wire/mail fraud, many of the statutes reach very narrow behavior. Pascacio-Rodriguez, 749 F.3d at 364. For instance, some of the federal statutes that do not require an overt act for a

11

The government in our case relies on this analysis for its argument that the generic definition of conspiracy does not require an overt act.  But the Fifth Circuit focused on "conspiracy to commit murder" specifically, did not give much weight to the primary federal general conspiracy statute under 18 U.S.C. § 371, and did not give much weight to the more than 2:1 ratio of states that require an overt act for conspiracy.  Id. at 368; see also United States v. Martinez-Lugo, 782 F.3d 198, 202 (5th Cir. 2015) (holding that the Taylor categorical approach requires courts to look to "state and federal statutes, the Model Penal Code, respected treatises, and dictionaries").

The Fifth Circuit concluded that "there is no basis for concluding that the Sentencing Commission intended to create a dichotomy in § 2L1.2 between conspiracy convictions under federal law and conspiracy convictions under state law" because Application Note 5 does not draw a distinction between state and federal crimes.  Pascacio-Rodriguez, 749 F.3d at 367.  And it is true that U.S.S.G. § 2L1.2, Application Note 1(B)(iv) seeks to reach all offenses "under federal, state, or local law."  But by holding the way it did, the Fifth Circuit may have actually *created* a

conspiracy conviction include such crimes as "conspiracy to falsely represent oneself as the registrant of five or more Internet Protocol addresses and to initiate commercial electronic mail messages from those addresses" (18 U.S.C. § 1037(a)(5)), "conspiracy to furnish facilities or privileges to ships or persons contrary to a presidential proclamation," (15 U.S.C. § 77), "conspiracy to damage or interfere with the operations of an animal enterprise by property damage" (18 U.S.C. § 43(a)(2)(A)), "conspiracy to violate provisions regulating helium gas," (50 U.S.C. § 167k), and "conspiracy to violate statutory provisions or regulations related to Iran freedom and counterproliferation," (22 U.S.C. § 8809(b)).  Therefore, a simple balancing of federal conspiracy statutes is not very helpful.

distinction between state and federal law rather than avoiding it.  Because the Guidelines does not define "conspiracy," a state conspiracy conviction would also be subject to the categorical approach.  Under that approach, the generic definition of "conspiracy," as noted by the Ninth Circuit in Garcia-Santana, 774 F.3d at 528, requires proof of an overt act.  Therefore, under the Fifth Circuit's approach, state conspiracy convictions and federal conspiracy convictions would be treated differently—state conspiracy convictions would require an overt act to qualify for enhancement under U.S.S.G. § 2L1.2 and federal conspiracy convictions would not.

In the second case, United States v. Rivera-Constantino, 798 F.3d 900 (9th Cir. 2015), the Ninth Circuit decided whether a conspiracy conviction under § 846 qualified for enhancement under U.S.S.G. § 2L1.2 (the exact same issue as this case). The Ninth Circuit acknowledged its previous opinion in Garcia-Santana regarding the generic definition of conspiracy, but held that it was not applicable because "the clear intent of the Sentencing Commission in drafting section 2L1.2 and its accompanying commentary was to encompass a prior federal drug conspiracy conviction under 21 U.S.C. § 846."  Id. at 903.  In so finding, the Ninth Circuit argued it followed "traditional rules of statutory construction," because the "plain meaning of [the] term" conspiring "is readily apparent form the text, context, and structure of the relevant Guidelines provision and commentary."  Id. at 904.  Therefore, the generic definition analysis was inapplicable.  But the Ninth Circuit, in Rivera-Constantino, never pointed to anything beyond assumptions about the Sentencing Commission's intent to establish this "plain meaning."

13

For instance, as Judge Paez pointed out in his dissent in <u>Rivera-Constantino</u>, Congress never provided a clear definition of conspiracy—different federal crimes have different elements. <u>Id.</u> at 907-08. The majority responded to this argument by stating:

> But at least with regards to federal drug trafficking conspiracies, Congress surely has provided a single, clear definition: the one articulated in 21 U.S.C. § 846. This, we conclude, was overwhelmingly likely to have been the meaning intended by the Sentencing Commission, notwithstanding the generic meaning of the word "conspiracy" as used in other contexts.

<u>Id.</u> at 904. However, in addition to the obvious omission of 18 U.S.C. § 371[6]—the general federal conspiracy statute that includes drug crimes as well as non-drug federal crimes and which requires proof of an overt act—the word "conspiring" in Application Note 5 of § 2L1.2 does not refer to just federal drug trafficking crimes. The word "conspiring" applies to all of the crimes listed in § 2L1.2, including *any* felony, state, or local felony or aggravated felony, some of which require proof of an overt act. Judge Paez also argued that the majority "sidestep[ped]" the applicable <u>Taylor</u> categorical approach. <u>Id.</u> at 906. Judge Paez noted that the majority "disregards [the Ninth Circuit's] established rule" of applying the categorical approach to determine whether a prior conviction satisfies the requirements of a § 2L1.2 enhancement. <u>Id.</u> at 907.

---

[6] The text of 18 U.S.C. § 371 requires an overt act: "If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons *do any act* to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both." (emphasis added).

14

In the government's third case, United States v. Sanbria-Bueno, 549 F. App'x 434 (6th Cir. 2013) (unpublished), the Sixth Circuit used logic similar to the Ninth Circuit to conclude that it did not have to apply the categorical approach to a conspiracy conviction under § 846. The Sixth Circuit held that "the [Sentencing] Commission's intent is clear," because "[t]he Commission expressly intended that a conviction under 21 U.S.C. § 846 for conspiracy to commit a federal drug offense proscribed by § 841 is a 'drug trafficking offense' as defined in the Guidelines." Id. at 438-39. But the Sixth Circuit—same as the Ninth and Fifth—went no further in its analysis than proclaiming that it was "clear" that conspiracy convictions under § 846 qualify for enhancement under § 2L1.2.

The problem with all three of these cases is that, if the Sentencing Commission "expressly intended" § 846 conspiracy convictions to qualify for enhancement under U.S.S.G. § 2L1.2, the Sentencing Commission could have stated so expressly—i.e., clearly. For instance, U.S.S.G. § 2L1.2 Application Note 5 could have stated that "The term 'conspiring' includes, but is not limited to, conspiracy convictions under 21 U.S.C. § 846."[7] Or it could have simply included a parenthetical after the word conspiring—e.g., "conspiring (whether or not an overt act was required)." But the Sentencing Commission did neither and instead provided a generic, undefined word

---

[7] As noted above, the Sentencing Commission made its intent clear by referencing specific federal statutes in several instances. For instance, Application Note 1(B)(v) to § 2L1.2 defines "Firearms offense" with reference to 18 U.S.C. §§ 921, 841(c), 844(h), 924(c), and 929(a).

15

ripe for the categorical approach. Therefore, we find the government's cited cases to be unpersuasive.

### d. Martinez-Cruz's proposed analysis should control

As discussed above, Martinez-Cruz's analysis arrives at the logical result through the prescribed legal process. The term "conspiring" is not defined in § 2L1.2 or its application notes, including Application Note 5. The Tenth Circuit applies the categorical approach to generic, undefined terms in the Guidelines. See Dominguez-Rodriguez, 817 F.3d at 1194. We find the analysis of the generic definition of "conspiracy" in Garcia-Santana persuasive. It omitted a discussion of the many federal conspiracy statutes, but federal conspiracy statutes support both requiring and not requiring an overt act.

The number of federal statutes allowing for conspiracy convictions without proof of an overt act is much larger than those requiring an overt act, but that by itself is not dispositive because of the narrow nature of many of the federal statutes—here, we are defining conspiracy generally (the states also define conspiracy generally). Of the federal statutes which could have applied to Martinez-Cruz's conviction, the broadest federal conspiracy statute, § 371, requires proof of an overt act—while the drug statute, § 846, does not. And while the common law of conspiracy did not require an overt act, as noted in Garcia-Santana, most jurisdictions have jettisoned that doctrine. Under the categorical approach, we look to the law's

16

current state.  See Dominguez-Rodriguez, 817 F.3d at 1195 (holding that courts should look to "the generic, contemporary meaning of the offense").[8]

Therefore, we conclude that the generic definition of "conspiracy" requires an overt act.  Section 846 does not.  See Shabani, 513 U.S. at 10.  Martinez-Cruz's conspiracy conviction under § 846 is a categorical mismatch for the generic definition of "conspiracy" in U.S.S.G. § 2L1.2 Application Note 5 and he should receive an eight-level enhancement instead of twelve.[9]  The other circuits to decide this issue held the opposite, that the categorical approach should not apply.  But the Fifth Circuit, Sixth Circuit, and Ninth Circuit (in Rivera-Constantino) divined the intent of the Sentencing Commission without offering any evidence of that intent.  And while the Sentencing Commission's intent is still relevant in the Tenth Circuit, we find no evidence of its intent regarding whether a conspiracy conviction requires an overt act—except for the plain language of the guideline, which uses a generic, undefined term, ripe for the categorical approach.[10]

---

[8] If we were to hold that the weight of federal statutes not requiring an overt act tipped the scale into equipoise with the weight of state statutes requiring an overt act, we would still find for Martinez-Cruz under the rule of lenity.  See United States v. Wilson, 10 F.3d 734, 736 (10th Cir. 1993) ("The rule of lenity applies where a statute is facially ambiguous and resort to the legislative history does not reveal the congressional intent of the language.  Under these circumstances, courts construe the statute favorably to the criminal defendant.  The rule applies to substantive, as well as sentencing, statutes.") (citations omitted).

[9] We do not reach the modified categorical approach because 21 U.S.C. § 846 is not divisible.

[10] We note that, if the Sentencing Commission intends for § 2L1.2 to reach all conspiracy convictions under federal law regardless of whether an overt act is required or not, it can amend the guidelines to state clearly that intention.

**CONCLUSION**

Although it pits us against our sister circuits, we must follow binding Tenth Circuit precedent and apply the categorical approach to a generic, undefined term in the Guidelines.  Martinez-Cruz's prior conviction for conspiracy to possess with intent to distribute fifty kilograms or more of marijuana, in violation of 21 U.S.C. § 846, is a categorical mismatch to the generic crime of "conspiracy."  We therefore REVERSE and REMAND for resentencing consistent with this opinion.