**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 28, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

GARY ALAN MCKIBBON,

    Defendant - Appellant.

No. 16-1493

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:16-CR-00130-RM-1)**
_____

Jacob Rasch-Chabot, Assistant Federal Public Defender (Virginia L. Grady, Federal Public Defender, with him on the briefs), Denver, Colorado for Defendant-Appellant Gary Alan McKibbon.

J. Bishop Grewell, Assistant U.S. Attorney (Robert C. Troyer, U.S. Attorney, and Robert Mark Russel, Assistant U.S. Attorney, on the brief), Denver, Colorado, for Plaintiff-Appellee United States of America.
_____

Before **BRISCOE**, **EBEL**, and **PHILLIPS**, Circuit Judges.
_____

**EBEL**, Circuit Judge.
_____

    In this direct criminal appeal, we conclude both that the district court plainly

erred in treating Defendant Gary McKibbon's prior Colorado drug distribution

conviction as a "controlled substance offense" under U.S.S.G. § 4B1.2(b), and that

that error warrants resentencing.

## BACKGROUND

McKibbon pled guilty to being a felon in possession of a firearm, in violation

of 18 U.S.C. § 922(g)(1).  In calculating his sentence for that offense under the 2016

sentencing guidelines, the district court consulted U.S.S.G. § 2K2.1, which provided

for a base offense level of twenty if McKibbon had a prior "controlled substance

offense" as defined by U.S.S.G. § 4B1.2(b) and its application note 1.  See U.S.S.G.

§ 2K2.1(a)(4)(A) & app. n.13.  The court, without objection, deemed McKibbon's

2014 Colorado conviction under Colo. Rev. Stat. § 18-18-405(1)(a) for distribution

of a Schedule I or II controlled substance to be such a "controlled substance offense."

Using a base offense level of twenty, then, the sentencing court calculated

McKibbon's total offense level to be twenty-one which, combined with his criminal

history category IV, resulted in an advisory guideline range of fifty-seven to seventy-

one months in prison.  The district court imposed a within-range sentence of sixty-six

months.

On appeal, McKibbon argues for the first time that his prior 2014 Colorado

conviction does not qualify as a "controlled substance offense."  We have jurisdiction

under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a) to consider his appeal.[1]

---

[1] The Court GRANTS the Government's motion to supplement the appellate record
with the plea agreement underlying McKibbon's prior Colorado conviction.  See

2

## STANDARD OF REVIEW

Because McKibbon did not object at sentencing to classifying his prior Colorado conviction as a "controlled substance offense," we review for plain error. See Fed. R. Crim. P. 52(b); see also United States v. Taylor, 843 F.3d 1215, 1219 (10th Cir. 2016), cert. denied, 137 S. Ct. 1608 (2017). To obtain relief, then, McKibbon "must establish (1) the existence of 'an error that has not been intentionally relinquished or abandoned,' (2) 'the error must be plain—that is to say, clear or obvious,' and (3) 'the error . . . [must] have affected the defendant's substantial rights.'" Taylor, 843 F.3d at 1220 (quoting Molina-Martinez v. United States, 136 S. Ct. 1338, 1343 (2016)). "'Once these three conditions have been met,' we must 'exercise [our] discretion to correct the forfeited error if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.'" Id. (quoting Molina-Martinez, 136 S. Ct. at 1343).

## LEGAL DISCUSSION

Colorado Revised Statute § 18-18-405(1)(a) makes it

> unlawful for any person knowingly to manufacture, dispense, sell, or distribute, or to possess with intent to manufacture, dispense, sell, or distribute, a controlled substance; or induce, attempt to induce, or conspire with one or more other persons, to manufacture, dispense, sell, distribute, or possess with intent to manufacture, dispense, sell, or distribute, a controlled substance; or possess one or more chemicals or supplies or equipment with intent to manufacture a controlled substance.

---

United States v. Armendariz-Perez, 543 F. App'x 876, 880 (10th Cir. 2013) (unpublished).

3

Relevant to the statute's proscription against selling a controlled substance, Colorado defines "[s]ale" to "mean[] a barter, an exchange, or a gift, or an offer therefor." Id. § 18-18-403(1) (emphasis added); see also id. § 18-18-102(33) (emphasis added).

The federal sentencing guidelines, in turn, define a "controlled substance offense" to mean

> the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b). This definition

> include[s] the offenses of aiding and abetting, conspiring, and attempting to commit such offenses.

Id. § 4B1.2, app. n.1.

## I. The district court erred in classifying McKibbon's Colorado conviction as a "controlled substance offense"

We apply a categorical/modified categorical analysis to determine whether McKibbon's prior Colorado conviction qualifies as a "controlled substance offense" under U.S.S.G. § 4B1.2(b). See United States v. Madkins, 866 F.3d 1136, 1143-44 (10th Cir. 2017). In doing so, our focus is on "the elements of the statute of conviction and 'not [on] the particular facts underlying that conviction.'" United States v. O'Connor, 874 F.3d 1147, 1151 (10th Cir. 2017) (quoting Taylor v. United States, 495 U.S. 575, 600 (1990)) (alteration omitted).

4

**A. Colo. Rev. Stat. § 18-18-405(1)(a) criminalizes a broader range of conduct than U.S.S.G. § 4B1.2(b) encompasses**

Comparing "the scope of the conduct covered by the elements of" an offense under Colo. Rev. Stat. § 18-18-405(1)(a) with § 4B1.2(b)'s definition of a "controlled substance offense," O'Connor, 874 F.3d at 1151, we conclude the state statute criminalizes a broader range of conduct than that included in § 4B1.2(b). Specifically, the state statute criminalizes all offers to sell a controlled substance, while U.S.S.G. § 4B1.2(b) does not encompass mere offers to sell a controlled substance.

Colorado Revised Statute § 18-18-405(1)(a), in pertinent part, makes it "unlawful for any person knowingly to manufacture, dispense, sell, or distribute, or to possess with intent to manufacture, dispense, sell or distribute, a controlled substance." Critically and relevant to the state statute's proscription against selling a controlled substance, Colorado defines "[s]ale" to "mean[] a barter, an exchange, or a gift, or an offer therefor." Id. § 18-18-403(1) (emphasis added); see also id. § 18-18-102(33) (emphasis added).

However, the sentencing guidelines' definition of a "controlled substance offense" in § 4B1.2(b) does not expressly include offering to sell. See Madkins, 866 F.3d at 1145. Instead, § 4B1.2(b) defines a "controlled substance offense" to include only "the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or

5

dispense," U.S.S.G. § 4B1.2(b). "[F]or purposes of this definition, 'distribute' means 'to deliver . . . a controlled substance or listed chemical.'" Madkins, 866 F.3d at 1144 (quoting 21 U.S.C. § 802(11)).

This court reached a similar conclusion in Madkins, holding that U.S.S.G. § 4B1.2(b)'s definition of a "controlled substance offense" did not encompass a conviction under a Kansas law that made it a crime to offer to sell a controlled substance. 866 F.3d at 1143-48.[2]

Other circuits have reached similar conclusions about other state statutes criminalizing offers to sell drugs. See United States v. Hinkle, 832 F.3d 569, 571-72 & 571 n.8 (5th Cir. 2016) (concluding Texas statutes that made it unlawful to offer to sell a controlled substance criminalized a broader range of conduct than U.S.S.G. § 4B1.2(b) encompasses, citing earlier Fifth Circuit cases); United States v. Savage, 542 F.3d 959, 964-66 (2d Cir. 2008) (reaching the same conclusion regarding Connecticut statute that made it unlawful to offer to sell a controlled substance).

Although a "controlled substance offense" under § 4B1.2(b) includes attempts to distribute controlled substances, in Madkins we considered and rejected the argument that such attempts would necessarily encompass a state offense involving an "offer to sell" a controlled substance:

---

[2] At the time Madkins pled guilty, the Kansas statutes at issue there did not expressly make it unlawful to possess the relevant controlled substance with the intent to offer it for sale. 866 F.3d at 1144-45. But Kansas case law and the state's pattern jury instructions at that time provided that proof of a defendant's possession of the controlled substance with the intent to offer it for sale was sufficient to support a conviction under those state statutes. Id. at 1146-47.

[W]e note that at first glance, it seems as though an offer for sale would fit squarely within the definition in the Guidelines, since the commentary to § 4B1.2 clarifies that a controlled substance offense includes an attempt to commit such an offense. But a closer look reveals that the two are not a categorical match. We have previously explained that in our circuit, "an attempt to commit a crime requires the *intent* to commit the crime and *overt acts* in furtherance of that intent." See United States v. Taylor, 413 F.3d 1146, 1155 (10th Cir. 2005) (emphasis added). And because a person can offer a controlled substance for sale without having the intent to actually complete the sale, a conviction for an offer to sell can be broader than a conviction for an attempt to sell.

For example, as several other circuits have noted, "[a]n offer to sell can be fraudulent, such as when one offers to sell the Brooklyn Bridge. In such a circumstance, the offer to sell is fraudulent in the sense that the person offering the bridge or the drug does not have the *intent* to distribute or sell the item." Savage, 542 F.3d at 965 [(2d Cir.)] (citing United States v. Palacios-Quinonez, 431 F.3d 471, 476 (5th Cir. 2005)). To be sure, courts have relied on this reasoning in distinguishing between a conviction for possession of a controlled substance with intent to sell or deliver, and a conviction for sale or delivery of a controlled substance without the possession element. But the argument applies with equal force in the context of the distinction between an offer and an attempt.

Since the former does not necessarily involve the intent to sell or distribute that is required for the latter, a conviction for possession with intent to sell a controlled substance—where sale is defined to include an offer—is broader than the conduct criminalized in § 4B1.2(a) and the authoritative commentary.

Madkins, 866 F.3d at 1147-48 (footnote omitted).

The Government argues that there is no Colorado Supreme Court case expressly addressing a conviction under Colo. Rev. Stat. § 18-18-405(1)(a) for a fraudulent or non- bona fide offer to sell controlled substances. But that was true, as well, of the Kansas law addressed in Madkins, yet this Court interpreted an "offer" for sale under Kansas law to include fraudulent offers made without the intent

7

required in § 4B1.2(b), even in the absence of a state case recognizing such a conviction. See 866 F.3d at 1147-48; see also United States v. Bryant, 571 F.3d 147, 156-58 (1st Cir. 2009) (holding New York offense of offering to sell a controlled substance fell within U.S.S.G. § 4B1.2(b) because "it is well-established under New York law that in order to support a conviction under an offering for sale theory, there must be evidence of a bona fide offer to sell—i.e., that defendant had both the intent and ability to proceed with the sale" (emphasis added) (internal quotation marks omitted)); United States v. Savage, 542 F.3d 959, 965-66 (2d Cir. 2008) (interpreting Connecticut statute criminalizing offers to include fraudulent offers without citing supporting state case).

The Government unpersuasively contends that, although the Colorado Supreme Court has never addressed the question, that Court "would probably" require proof of a bona fide offer to sell controlled substances to support a conviction. (Aple. Br. 12.) However, the plain language of the Colorado statute makes it unlawful to "offer" to sell controlled substances. The statute does not further modify or limit the term "offer." Without any Colorado case law to the contrary, we have no authority on behalf of Colorado to insert any new limiting adjective such as "bona fide" adjacent to the unadorned word, "offer." Nor is there legislative or judicial precedent in Colorado that has been cited to us that suggests that the Colorado Supreme Court would engage in its own legislation by rewriting Colo. Rev. Stat. §§ 18-18-405(1) or 18-18-403(1), if this issue were presented to

8

them. Thus, we cannot conclude the state courts would limit Colorado's statute criminalizing "offers to sell" controlled substances only to bona fide offers.

Moreover, it makes sense that the Colorado legislature would intend to criminalize both sham as well as bona fide offers to sell drugs. Experience teaches that real drug dealers sometimes engage in sham deals, and those deals are fraught with the potential for violence, and so it is not implausible that Colorado would want to criminalize such activities.

The Government, nevertheless, asserts that a Colorado Court of Appeals case, People v. Farris, 812 P.2d 654 (Colo. Ct. App. 1991) limited offers criminalized under § 18-18-405(1)(a) to bona fide offers. But Farris did not address that question. Instead, Farris addressed a prior version of the statutes at issue here, and specifically considered whether a "procuring agent" defense remained available after the state legislature revised these statutes. 812 P.2d at 655. Farris does not address whether the predecessor Colorado statute (or the current one) criminalizes only bona fide (as opposed to sham) offers to sell controlled substances.

Based on this Court's reasoning in Madkins, then, we conclude that Colo. Rev. Stat. § 18-18-405(1)(a) criminalizes a broader range of conduct than is included in U.S.S.G. § 4B1.2(b)'s definition of a "controlled substance offense."

**B. The Colorado statute is indivisible**

The Government next argues that Colo. Rev. Stat. § 18-18-405(1)(a) is divisible, setting forth the elements of multiple criminal offenses, including manufacturing, dispensing, distributing, selling, or offering to sell a controlled

9

substance. If so, the government argues that we can apply the modified categorical approach to determine to which of those offenses McKibbon pled guilty in 2014. See Mathis v. United States, 136 S. Ct. 2243, 2249 (2016). If we can do so, and if by references to permitted materials we can tell that McKibbon was not convicted of the overly broad offense of offering to sell a controlled substance, then the Government contends his state conviction could still qualify as a "controlled substance offense" under U.S.S.G. § 4B1.2(b). But if the statute lists, not elements of different offenses, but only different means by which a person commits a single drug distribution offense, then the state statute is indivisible and the modified categorical approach will not apply. See Mathis, 136 S. Ct. at 2249-51, 2253.

Mathis indicated that it will be "easy" to determine whether a state statute lists elements of different crimes or only means to commit a single crime when "a state court decision definitively answers the question." Id. at 2256. We have just such a situation here. The Colorado Supreme Court, in People v. Abiodun, held that Colo. Rev. Stat. § 18-18-405(1)(a) "defines a single offense." 111 P.3d 462, 464 (Colo. 2005). In Abiodun, the defendant was charged and convicted under § 18-18-405(1)(a) of both possession and distribution of a controlled substance arising out of the same transaction; that is, "the only evidence of the defendant's possession was that he acquired the drugs from a third party for distribution to the informant." 111 P.3d at 464. The Colorado Supreme Court held that convicting the defendant for both possession and distribution under those circumstances violated double jeopardy, id., because the Colorado legislature, in enacting Colo. Rev. Stat. § 18-18-405,

10

intended "to create a single, unitary offense." 111 P.3d at 468 (stating also "that the acts enumerated in section 405(1)(a) all represent stages in the commission of one crime."). In support of its conclusion, the Colorado Supreme Court went on to state that the Colorado legislature, in enacting § 18-18-405(1)(a), "joined" "a number of acts . . . as a disjunctive series, in a single sentence, without any attempt to differentiate them by name or other organizational device"; "join[ed] in a single proscription an entire range of conduct potentially facilitating or contributing to illicit drug traffic"; and "criminalized" that "entire range of conduct . . . in a single subsection of a statute entitled simply, 'Unlawful distribution, manufacturing, dispensing, sale or possession.'" Id. at 466 (footnote omitted). Abiodun further indicated that the statute's "one sentence proscription is structured as a series of acts, with reference to the same controlled substance and governed by a common mens rea"; "[t]he acts chosen for specific inclusion are not themselves mutually exclusive but overlap in various ways and cover a continuum of conduct from the production of a controlled substance to its delivery to another person, under any of a number of circumstances"; and the sentence for violating this statute "is in no way dependent upon the particular enumerated act or acts he is found to have committed." Id. Abiodun then concluded:

> Nothing in the specific language of the statute or the history of its enactment suggests an intent to create a separate offense for each proscribed act. On the contrary, the scope and structure of the proscriptive provision, combined with sentencing provisions differentiating punishments on the basis of the quantum of drugs (rather than the act) involved, strongly points to the creation of a single crime,

11

the gravamen of which is preventing the unauthorized delivery of a particular quantity of a particular contraband substance.

Id. at 466-67 (internal quotation marks omitted). Based on the Colorado Supreme Court's decision in Abiodun, we conclude § 18-18-405(1)(a) is an indivisible statute, setting forth one offense which can be committed by a variety of means.

The Government argues that, because Abiodun was specifically addressing a double jeopardy question, that decision does not directly answer the relevant question here, whether Colo. Rev. Stat. § 18-18-405(1)(a) is divisible. To the contrary, Abiodun addresses exactly that question, holding that the state legislature intended to create a single unitary offense when it enacted the "alternatively-phrased" § 18-18-405(1)(a). Mathis, 136 S. Ct. at 2249; see also id. at 2256.

Moreover, Mathis suggested that, in determining whether a statute is divisible, we consider whether it provides different punishments for the different ways listed to violate the statute's criminal proscription. See 136 S. Ct. at 2256. The Colorado Supreme Court did just that in Abiodun, noting that § 18-18-405(1)(a) does not provide different punishments depending on whether a defendant manufactured or distributed or offered to sell a controlled substance.

Finally, Mathis suggests that, "if state law fails to provide clear answers," we can take a "peek" at the documents of this defendant's prior conviction "for the sole and limited purpose of determining whether the listed items are elements of the offense." 136 S. Ct. at 2256-57 (internal quotation marks omitted). Doing so here, we see that McKibbon pled guilty to distribution of a controlled substance under

12

Colo. Rev. Stat. 18-18-405(1)(a) by either selling or distributing heroin. That further suggests that selling or distributing a controlled substance are only means to commit the single, indivisible offense of distributing a controlled substance. See Mathis, 136 S. Ct. at 2248.

For all of these reasons, then, we conclude Colo. Rev. Stat. § 18-18-405(1)(a) sets forth a single indivisible criminal offense. And because that offense criminalizes a broader range of conduct than is encompassed by U.S.S.G. § 4B1.2(b)'s definition of a "controlled substance offense," any conviction under Colo. Rev. Stat. § 18-18-405(1)(a) will categorically not qualify as a "controlled substance offense" under § 4B1.2(b). The district court, then, erred in treating McKibbon's prior Colorado conviction under § 18-18-405(1)(a) as a "controlled substance offense."

## II. The error was plain

An error is plain if it "is clear at the time of the appeal." United States v. Iverson, 818 F.3d 1015, 1023 (10th Cir.), cert denied, 137 S. Ct. 217 (2016); see Johnson v. United States, 520 U.S. 461, 468 (1997) ("[I]t is enough that an error be 'plain' at the time of appellate consideration."). Here, it was plain error to conclude that McKibbon's prior Colorado conviction under Colo. Rev. Stat. § 18-18-405(1)(a) satisfied U.S.S.G. § 4B1.2(b)'s definition of a "controlled substance offense."

First, the Tenth Circuit has clearly held that § 4B1.2(b) does not include offers to sell controlled substances, unless the criminalized activity amounts to an attempt to distribute controlled substances. That means in essence that § 4B1.2(b) includes only bona fide offers to sell, because such activity can be considered an attempt to

13

distribute.  But § 4B1.2(b) does not include non-bona fide offers to sell because "offer" itself is not listed in § 4B1.2(b) and a non-bona fide offer cannot be considered an attempt to distribute.

Second, the plain language of Colo. Rev. Stat. §§ 18-18-405(1)(a) and 18-18-403(1) criminalizes all offers to sell controlled substances.  That phrase has never been limited by the Colorado courts and so it plainly criminalizes non-bona fide offers to sell drugs as well as bona fide offers.

Third, Colo. Rev. Stat. § 18-18-405(1) is non-divisible.  That is the clear holding of the Colorado Supreme Court in Abiodun.  Thus we may evaluate a conviction under that statute only under the categorical, rather than modified categorical, approach.

Therefore, it is unavoidable that, applying the categorical approach, McKibbon's conviction under Colo. Rev. Stat. § 18-18-405(1)(a) does not satisfy the requirements of U.S.S.G. § 4B1.2(b).[3]

## III.  The error affected McKibbon's substantial rights

At the third step of the plain-error analysis, McKibbon must show that the plain error affected his substantial rights; that is, that "the error was prejudicial and

---

[3] We recognize that McKibbon did not object at sentencing to treating his prior conviction as a "controlled substance offense" under U.S.S.G. § 4B1.2(b), and therefore no one made these arguments to the district court.  Further, neither the district court nor the parties had the benefit of Madkins, which the Tenth Circuit issued while this appeal was pending.  Nonetheless, the relevant time period in determining whether an error is plain is when we consider McKibbon's direct appeal, which represents our opportunity to right any error that may have emerged with the evolution of the law during the Government's prosecution of McKibbon.

affected the outcome of the proceedings." United States v. Carillo, 860 F.3d 1293, 1300 (10th Cir. 2017). Here, without a previous "controlled substance offense," McKibbon did not qualify for a base offense level of twenty. He contends on appeal, and the Government does not dispute this, that his base offense level would have been fourteen and his total offense level would have been fifteen. That would have resulted in an advisory prison range of between thirty and thirty-seven months, instead of fifty-seven to seventy-one months.

Because "the guidelines form the essential starting point in any federal sentencing analysis, . . . it follows that an obvious error in applying them runs the risk of affecting the ultimate sentence." United States v. Sabillon-Umana, 772 F.3d 1328, 1333 (10th Cir. 2014) (internal quotation marks).

> Nothing in the text of Rule 52(b), its rationale, or the Court's precedents supports a requirement that a defendant seeking appellate review of an unpreserved Guidelines error make some further showing of prejudice beyond the fact that the erroneous, and higher, Guidelines range set the wrong framework for the sentencing proceedings.

Molina-Martinez, 136 S. Ct. at 1345.

## IV. The error warrants relief because it seriously affects the fairness, integrity or public reputation of judicial proceedings

Our analysis of the fourth plain-error prong is informed by our recent decision in United States v. Rosales-Miranda, 755 F.3d 1253 (10th Cir. 2014). There we explained that,

> [u]nder the fourth prong of the plain-error test, the defendant must show that the complained-of error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Figueroa–Labrada, 720 F.3d 1258, 1266 (10th Cir. 2013) (internal quotation marks

15

omitted). "The fourth prong of the plain error test is discretionary," United States v. Turrietta, 696 F.3d 972, 984 (10th Cir. 2012), and its standard is a "demanding standard, and of course, depends on the facts of the particular case," United States v. Gonzalez–Huerta, 403 F.3d 727, 737 (10th Cir. 2005) [(en banc)] (citation omitted).

Reversal on the fourth prong is appropriate only where the error is "'particularly egregious' and the 'failure to notice the error would result in a miscarriage of justice.'" United States v. Rufai, 732 F.3d 1175, 1195 (10th Cir. 2013) (quoting Gonzalez–Huerta, 403 F.3d at 736). As part of this showing, in the sentencing context, a defendant "must demonstrate a strong possibility of receiving a significantly lower sentence" but for the error. United States v. Mullins, 613 F.3d 1273, 1294 (10th Cir. 2010) (quoting United States v. Meacham, 567 F.3d 1184, 1190 (10th Cir. 2009)) (internal quotation marks omitted).

Rosales-Miranda, 755 F.3d at 1262.

McKibbon has met this "demanding standard," Gonzalez-Huerta, 403 F.3d at 737, and has "demonstrate[d] a strong possibility of receiving a significantly lower sentence," Mullins, 613 F.3d at 1294 (internal quotation marks omitted). McKibbon argued that, but for the district court's error, his base offense level would have been fourteen, not twenty, his total offense level would have been fifteen, not twenty-one, and his guideline imprisonment range would have been thirty to thirty-seven months, not fifty-seven to seventy-one months. (Aplt. Br. 13.) The district court sentenced McKibbon to a within-guideline sixty-six-month term of imprisonment. (Id. at 13-14.) His sixty-six-month term of imprisonment, as McKibbon argued, is "nearly 80% above the top of the" thirty to thirty-seven-month guideline range, which would have been the proper range but for the district court's error. (Id. at 14 (emphasis added).)

16

Because McKibbon has met the "demanding standard," <u>Gonazlez-Huerta</u>, 403 F.3d at 737, of the plain error's fourth prong by showing that the district court's error "seriously affected the fairness, integrity, or public reputation of judicial proceedings," <u>Figueroa-Labranda</u>, 720 F.3d at 1266, we exercise our discretion to grant McKibbon resentencing.

## CONCLUSION

For the foregoing reasons, we remand this case to the district court with directions to vacate McKibbon's sentence and resentence him.