FILED
**United States Court of Appeals**
**Tenth Circuit**

**May 9, 2022**

**Christopher M. Wolpert**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

PATRICK LAJUAN JONES, JR.,

    Defendant - Appellant.

No. 20-6112
(D.C. No. 5:19-CR-00346-D-1)
(W.D. Okla.)

_____

**ORDER**

_____

Before **TYMKOVICH**, Chief Judge, **HARTZ**, **HOLMES**, **MATHESON**, **PHILLIPS**, **McHUGH**, **MORITZ**, **EID**, **CARSON**, and **ROSSMAN**, Circuit Judges.[*]

_____

This matter is before the court on Appellant's Petition for Rehearing, which includes a request for rehearing en banc. We also have a response from Appellee. To the extent Appellant seeks rehearing by the panel, the petition is denied pursuant to Fed. R. App. P. 40.

The petition and response were transmitted to all non-recused judges of the court who are in regular active service, and a poll was called. A majority of the participating

---

[*] The Honorable Robert E. Bacharach is recused in this matter and did not participate in consideration of Appellant's rehearing petition.

judges voted to deny the petition. See Fed. R. App. P. 35(a). Consequently, Appellant's request for rehearing en banc is also denied.

Judge Rossman, who would grant rehearing en banc, has prepared the attached written dissent from the denial of rehearing en banc.

Entered for the Court,

CHRISTOPHER M. WOLPERT, Clerk

*United States v. Jones*, No. 20-6112

**ROSSMAN, J.**, dissenting.

"En banc review is an extraordinary procedure intended to focus the entire court on an issue of exceptional public importance or on a panel decision that conflicts with a decision of the United States Supreme Court or of this court." 10th Cir. R. 35.1(A). *Accord* Fed. R. App. P. 35(a). Both components of this standard are satisfied here. The panel decision in *Jones* fails to contend with binding precedent and reaches the wrong result on a recurring question of exceptional public importance with far-reaching implications in our circuit and nationally. *See United States v. Jones*, 15 F.4th 1288 (10th Cir. 2021). I respectfully submit en banc review was warranted and should have been granted.

The question in *Jones* is how to define "controlled substance" in U.S.S.G. § 4B1.2(b). Does that term have a uniform definition or does its meaning vary according to the state of conviction? The *Jones* panel—invoking plain-language analysis—held the latter. I respectfully disagree. *Jones* cannot be squared with the purpose of the Guidelines, the categorical approach, and the longstanding requirement of national uniformity in federal sentencing law established in *Taylor v. United States*, 495 U.S. 575 (1990). Our sister circuits are sharply divided on the question presented in *Jones* and the correct approach to answering it. Likewise, our court's precedent has employed inconsistent methodology in construing undefined terms in § 4B1.2 and related guidelines (e.g., § 2L1.2). Undoubtedly, the question in *Jones* comes up frequently, and all stakeholders in the federal sentencing process depend on its accurate resolution.

As the rehearing petition observes, *Jones* conflicts with a foundational principle of the categorical approach from *Taylor* and its progeny—the definition of a predicate offense does not "depend on the definition adopted by the State of conviction." Pet. Reh'g 10 (quoting *Taylor*, 495 U.S. at 591). The panel opinion does not squarely address *Taylor*'s uniformity principle. However, it suggests § 4B1.2(b)'s reference to convictions "under federal *or* state law" overcomes any presumption that a uniform definition applies. *Jones*, 15 F.4th at 1292 (quoting § 4B1.2(b)). This is incorrect.

That § 4B1.2(b) references "state law" when modifying the term "controlled substance offense" does not permit an exception to the categorical approach's uniformity principle. Predicate offense definitions routinely refer to "federal or state law" simply to clarify, as here, that they include state convictions—not to indicate that their meaning turns on state law. Indeed, in the Career Offender guideline at issue here, both the "crime of violence" and "controlled substance offense" definitions generally refer to any "offense under federal or state law." U.S.S.G. § 4B1.2. Yet, this phrasing has never justified relying on a state's definition of, e.g., "physical force," "robbery," or "counterfeit substance." As the Supreme Court reminds us, "Coherence has a claim on the law." *Mathis v. United States*, 579 U.S. 500, 520 (2016). If mere reference to "state law" in the guideline's text were sufficient justification to abandon *Taylor*'s uniformity requirement, then none of the Career Offender predicates would require uniform definitions, upending an entire body of settled precedent.

Petitioner also asserts that our precedent, namely *Madkins* and *McKibbon*, demonstrates that "when tasked with defining an operative term . . . in USSG § 4B1.2(b),

2

the Court relies on the federal definition of the offense." Pet. Reh'g 7 (citing *United States v. Madkins*, 866 F.3d 1136 (10th Cir. 2017); *United States v. McKibbon*, 878 F.3d 967 (10th Cir. 2017)). Those cases, while not necessarily dispositive here, certainly highlight inconsistency in our approach to construing the Career Offender guideline. We have acknowledged as much. *See United States v. Martinez-Cruz*, 836 F.3d 1305, 1308 (10th Cir. 2016) ("There are two major strands of precedent in the Tenth Circuit involving the Guidelines and categorical approach. The first emphasizes the *Taylor* categorical approach, the second emphasizes the Sentencing Commission's intent."). Granting en banc rehearing would have allowed an opportunity to clarify a singular approach for construing the meaning of undefined terms in the Guidelines.

Accordingly, I respectfully dissent from the denial of rehearing en banc.

## I.　*Jones* abandons *Taylor* and the foundational principle of national uniformity in federal sentencing law.

In *Taylor v. United States*, the Supreme Court expressly rejected an interpretation that would make a sentencing enhancement "depend on the definition adopted by the State of conviction." 495 U.S. at 590. Such an interpretation, the Supreme Court determined, "would mean that a person convicted of unlawful possession of a firearm would, or would not, receive a sentence enhancement based on exactly the same conduct, depending on whether the State of his prior conviction happened to call that conduct 'burglary.'" *Id.* at 590-91. The panel opinion does not mention *Taylor* nor acknowledge this bedrock principle.

3

Instead, *Jones* indirectly addresses national uniformity in federal sentencing law in two ways. First, the panel opinion observes the guideline references "state law," and thus finds no need to apply the presumption, in *Jerome v. United States*, 318 U.S. 101, 104 (1943), against making the application of federal law dependent on state law. *See Jones*, 15 F.4th at 1292. And second, the panel opinion reasons that "disregarding *any* conviction under a state's categorically broader, indivisible drug-offense statute . . . arguably undermines national uniformity in sentencing." *Id.* at 1296. Neither ground adequately justifies an exception to the uniform-definition requirement of the categorical approach.

1. **The panel's discussion of the *Jerome* presumption**

The panel opinion rejects the reasoning employed by the Second, Ninth, and Fifth Circuits, concluding those courts erroneously "relied on the *Jerome* presumption—a presumption that 'assume[s], in the absence of a plain indication to the contrary, that Congress when it enacts a statute is not making the application of the federal act dependent on state law.'" *Jones*, 15 F.4th at 1292 (alteration in original) (quoting *Jerome*, 318 U.S. at 104). The *Jerome* presumption does not apply here, the panel reasons, "because § 4B1.2(b), by its plain language, references 'state law.'" *Id.* I disagree with this analysis.

First, only the Second Circuit in *United States v. Townsend*, 897 F.3d 66 (2d Cir. 2018), actually invoked the *Jerome* presumption. The Ninth and Fifth Circuits relied instead on the "purpose of the generic definition as envisioned in *Taylor*," which "was to ensure that there is some 'uniform definition independent of the labels employed by

4

various [s]tates' criminal codes.'" *United States v. Leal-Vega*, 680 F.3d 1160, 1166

(9th Cir. 2012) (alteration in original) (quoting *Taylor*, 495 U.S. at 589). *Accord United*

*States v. Gomez-Alvarez*, 781 F.3d 787, 793-94 (5th Cir. 2015). Because only the Second

Circuit actually relied on the *Jerome* presumption, the panel opinion does not address the

sound reasoning of the Ninth and Fifth Circuits.[1]

Second, the panel's brief discussion of the *Jerome* presumption is no substitute for

contending with *Taylor*'s requirement that predicate offenses be uniformly defined

independent of state law. *Taylor* did not rely on the *Jerome* presumption—it never

mentioned it. That is unsurprising because the *Jerome* presumption also operates outside

the setting of federal sentencing law. The uniformity principle *Taylor* endorsed was

specific to the federal sentencing context—that is, *Taylor* relied on Congress's "general

approach, in designating predicate offenses, of using uniform, categorical definitions . . .

regardless of technical definitions and labels under state law." *Taylor*, 495 U.S. at 590.

The Supreme Court thought it "implausible that Congress intended the meaning of

'burglary' for purposes of § 924(e) to depend on the definition adopted by the State of

---

[1] As the Ninth Circuit correctly explained, the "underlying theory of *Taylor* is that a national definition of the elements of a crime is required so as to permit uniform application of federal law in determining the federal effect of prior conviction." *Leal-Vega*, 680 F.3d at 1165. The *Jones* panel depends on the very justifications the Ninth Circuit considered and, for good reason, rejected, because the justifications are "rooted in canons of statutory interpretation and presumptions of Congressional intent" that "would undermine the reasoning underlying the categorical approach in the first place." *Id.* The First Circuit recently endorsed the reasoning of the Ninth and Fifth Circuits, albeit only in dicta, observing that the sort of approach the panel opinion adopts here "is fraught with peril." *United States v. Crocco*, 15 F.4th 20, 23 (1st Cir. 2021).

5

conviction." *Id.* "Without a clear indication that . . . Congress intended to abandon its general approach of using uniform categorical definitions to identify predicate offenses," the Supreme Court rejected the government's contention that the definition of burglary could vary according to state law. *Id.* at 591.

Here, the panel opinion forsakes *Taylor*'s uniformity mandate without a "clear indication" that the Sentencing Commission intended to do so. The only justification the panel opinion gives for overcoming the *Jerome* presumption is that the definition of "controlled substance offense" expressly references "state law." *Jones*, 15 F.4th at 1292. However, we have always required uniform definitions of terms within the "controlled substance offense" guideline—notwithstanding that the words "federal or state law" appear in the text.[2] And sentencing enhancement provisions routinely refer expressly to convictions under "state law." For example, the definition of "crime of violence" in § 4B1.2(a) likewise mentions "any offense under . . . state law." A textual reference to "state law" is not a sufficient justification for abandoning *Taylor*'s uniformity requirement (or the *Jerome* presumption). How can we reconcile *Jones* with the well-settled rule that Career Offender predicates require uniform definitions? The panel opinion does not tell us.

In response to the rehearing petition, the government argues for the first time that the Supreme Court in *Taylor* "recognized that while the entire definition of a predicate

---

[2] *See, e.g.*, *Madkins*, 866 F.3d at 1144; *McKibbon*, 878 F.3d at 972; *United States v. Thomas*, 939 F.3d 1121, 1122 (10th Cir. 2019); *United States v. Dominguez-Rodriguez*, 817 F.3d 1190, 1195-96 (10th Cir. 2016).

offense cannot be controlled by labels put on it by state law, a term in the definition could be." Resp. Pet. Reh'g 17. But the Supreme Court has never squarely considered whether a term within a uniform generic definition may be defined by state law. It seemed to suggest just the opposite in *Esquivel-Quintana v. Sessions*, 137 S. Ct. 1562 (2017).

In *Esquivel-Quintana*, the Supreme Court addressed the meaning of "sexual abuse of a minor" in the Immigration and Nationality Act (INA). *Id.* at 1567. The government's proposed definition was conduct that "(1) is illegal, (2) involved sexual activity, and (3) is directed at a person younger than 18 years old." *Id.* at 1569. The Court flatly rejected this definition, reasoning it "turns the categorical approach on its head by defining the generic federal offense of sexual abuse of a minor as whatever is illegal under the particular law of the State where the defendant was convicted. Under the Government's preferred approach, there is no 'generic' definition at all." *Id.* at 1570. The Court also did not conclude that "minor" means the age of consent in any particular state—it considered instead what the uniform "generic" definition of "minor" was: "Although the age of consent for statutory rape purposes varies by jurisdiction, reliable dictionaries provide evidence that the 'generic' age—in 1996 and today—is 16." *Id.* at 1569 (citation omitted).

The same reasoning holds here. "Controlled substance" is not whatever substance any particular state controls—it must have a generic definition uniform among every jurisdiction. To permit otherwise would turn the categorical approach on its head.

2. **The panel's rationale that *Jones* more fully achieves the goal of sentencing uniformity**

*Jones* briefly addresses national uniformity in federal sentencing law when the panel reasons: "disregarding *any* conviction under a state's categorically broader, indivisible drug-offense statute in determining whether to enhance a defendant's sentence arguably undermines national uniformity in sentencing more than considering *all* state-law convictions under indivisible or divisible statutes, though some convictions might involve non-CSA-listed substances." *Jones*, 15 F.4th at 1296. The panel seems to reject a uniform definition to promote uniformity in sentencing. This makes no sense. Some convictions involving culpable conduct might not count as predicates due to a statute's technical overbreadth. This is a consequence of principled adherence to the categorical approach, not a reason to create an ad hoc exception to it.

Importantly, the concern *Jones* identifies is not at all unique to the "controlled substance offense" context. For example, a burglary statute might be overbroad because it applies to boats, *Mathis*, 579 U.S. at 516; an aggravated robbery statute might be overbroad because purse-snatching is a sufficient use of force, *United States v. Bong*, 913 F.3d 1252, 1262-65 (10th Cir. 2019); and federal drug conspiracy is overbroad because it does not require an overt act, *Martinez-Cruz*, 36 F.3d at 1310-11. It matters not whether the overwhelming majority of convictions under these statutes involve culpable conduct; the categorical approach mandates they do not count as predicate offenses. That some defendants might not receive a sentence enhancement due to a perceived technicality has never been a justification for creating exceptions to the categorical approach. And it is of

particularly little concern in the Guidelines context, where a district court maintains discretion to impose an upward variance based on underrepresented criminal history and the § 3553(a) sentencing factors.

Finally, *Jones* suspects the categorical approach "arguably" fails to serve its intended purpose of promoting national uniformity in sentencing. 15 F.4th at 1296. Maybe so. But applicable law is clear: predicate offenses must be given uniform definitions that do not vary according to the state of conviction. To be sure, the categorical approach is not without its critics. There appears to be widespread categorical-approach fatigue in our federal courts. According to "a growing number of judges across the country[,] . . . the categorical approach perverts the will of Congress, leads to inconsistent results, wastes judicial resources, and undermines confidence in the administration of justice." *United States v. Scott*, 990 F.3d 94, 126 (2d Cir. 2021) (Park, J., concurring) (collecting cases). It hardly needs stating that even righteous critique by reasoned jurists provides courts no legitimate basis for abandoning the dictates of applicable law. Significantly, each opinion *Scott* cites bemoans the categorical approach but reluctantly applies it—and some appropriately call upon Congress, the Supreme Court, or the Sentencing Commission to effect needed change. *See, e.g.*, *Lopez-Aguilar v. Barr*, 948 F.3d 1143, 1149 (9th Cir. 2020) (Graber, J., concurring) ("I write separately to add my voice to the substantial chorus of federal judges pleading for the Supreme Court or Congress to rescue us from the morass of the categorical approach."). What the panel expresses is akin to a policy disagreement, and that cannot justify, let alone authorize, our decision to stray from binding precedent. *United States v.*

9

*Guillen*, 995 F.3d 1095, 1114 (10th Cir. 2021) ("Vertical stare decisis is absolute and requires us, as middle-management circuit judges, to follow applicable Supreme Court precedent in every case. So once the Supreme Court has adopted a rule, standard, or interpretation, we must use that same rule, standard, or interpretation in later cases."); *see also SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 137 S. Ct. 954, 967 (2017) ("[W]e cannot overrule Congress's judgment based on our own policy views.").

II.   *Jones* **employs "plain-language analysis," but our precedent does not take a consistent approach to construing undefined terms in the Guidelines.**

The petition for rehearing contends we have applied the federal statutory definition of "distribute" to § 4B1.2(b), which had left it undefined. Pet. Reh'g 6-7 (citing *Madkins*, 866 F.3d at 1144; *McKibbon*, 878 F.3d at 972). In these cases, we concluded, based on the federal statutory definition, the state offenses included "offers" to sell and therefore were overbroad. *Id.* According to Petitioner, this analysis shows that "when tasked with defining an operative term left undefined . . . in USSG § 4B1.2(b), the Court relies on the federal definition of the offense." *Id.* at 7. That's not quite right. In other cases, not discussed in the petition for rehearing, we have expressly declined to import the federal statutory definition—as the *Jones* panel correctly recognized. *See, e.g.*, *Thomas*, 939 F.3d at 1122 (rejecting the federal definition of "counterfeit substance").

What all of this reliably demonstrates is our approach to construing undefined terms in the "controlled substance offense" definition and related guidelines (e.g., § 2L1.2) has been inconsistent.

- In *Madkins*, we relied exclusively on the federal definition. 866 F.3d at 1144.

- In *Dominguez-Rodriguez*, 817 F.3d at 1195, we defaulted to the federal definition in determining "the generic, contemporary meaning of 'possession with intent to distribute,'" because the parties failed to "point to any other sources, such as state definitions or the Model Penal Code, indicating that we should treat the generic, contemporary meaning of 'possession with intent to distribute' differently than the federal offense."

- In *Martinez-Cruz*, we determined the generic, contemporary meaning of "conspiracy" by relying on a survey of the states, Model Penal Code, criminal law treatises, and federal law, and we held that the federal drug conspiracy statute was categorically overbroad. 836 F.3d at 1310-11.

- In *Thomas*, we rejected the uniform generic definition of "counterfeit substance" adopted by the Controlled Substances Act and the majority of states in favor of a plain-meaning definition. 939 F.3d at 1122-26.

- And here, the *Jones* panel used a plain-language approach to hold "controlled substance" does not have a uniform definition at all—rather, its definition changes depending on the state of conviction. 15 F.4th at 1292.

Our precedent does not evince a consistent method for determining the meaning of undefined terms in the "controlled substance offense" definition. We recognized as much in *Martinez-Cruz*, noting the tension in our jurisprudence between applying the *Taylor* categorical approach's focus on uniform generic definitions and the intent-of-the-Sentencing-Commission approach's focus on plain, ordinary meaning. 836 F.3d at 1308-09.

We lack uniformity even in how to decipher the intent of the Sentencing Commission. The *Martinez-Cruz* panel opted to focus on the *Taylor* categorical approach in concluding that a federal § 846 drug conspiracy conviction did not fit the generic definition of "conspiracy" for purposes of § 2L1.2. *Id.* at 1310 ("[B]ecause we find that the intent of the Sentencing Commission is not clear, we . . . follow prior Tenth Circuit

11

precedent . . . in applying the categorical approach."). In *Jones*, the panel opted to focus on the plain, ordinary meaning of the text to determine the Sentencing Commission's intent.

By denying rehearing en banc in *Jones*, we have missed a much-needed opportunity to articulate a singular approach to construing undefined terms in the Guidelines, particularly in the context of "controlled substance offense" and "drug-trafficking offense" definitions in § 4B1.2 and § 2L1.2.

### III.    *Jones* **presents a recurring question at the heart of federal sentencing law.**

The *Jones* opinion has significant reach. It affects prior drug convictions not only from Oklahoma, but every state. It is not limited solely to potential career offenders—the felon-in-possession guideline also incorporates the definitions in § 4B1.2, and the illegal re-entry guideline contains a materially identical definition of "drug-trafficking offenses." *See* U.S.S.G. § 2K2.1 cmt. n.1; § 2L1.2 cmt. n.2. These guidelines are a mainstay of federal sentencing in the district courts. For example, the Sentencing Commission reports that, in 2020 alone, United States District Courts imposed 3,226 enhanced sentences based on a prior conviction under § 2K2.1.[3] Undoubtedly, many of these cases will be reviewed by the courts of appeal. As some circuit judges have long lamented, categorical-approach litigation consumes a disproportionate amount of judicial resources. *See, e.g.*, *United States v. Aguila-Montes de Oca*, 655 F.3d 915, 917 (9th Cir. 2011)

---

[3] *See* U.S. Sent'g Comm'n, *Use of Guidelines and Specific Offense Characteristics*, *Guideline Calculation Based*, *Fiscal Year 2020*, at 51, https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/guideline-application-frequencies/Use_of_SOC_Guideline_Based.pdf.

(en banc) ("Indeed, over the past decade, perhaps no other area of the law has demanded more of our resources."). This is an area of law where enhancing clarity has meaningful, practical implications for the administration of justice.

We cannot ignore the sharp circuit split on this consequential issue or assume it will be resolved in a way that obviates the need for en banc review in *Jones*. The Supreme Court should weigh in, but will it? Any optimism seems unfounded. "[A]lthough a core responsibility of the Supreme Court is to resolve circuit splits, the Court decided in *Braxton v. United States*, 500 U.S. 344, 348 (1991), that circuit splits regarding the sentencing guidelines are best left to the Sentencing Commission to resolve through amendments to the guidelines." *Thomas*, 939 F.3d at 1132. True to its word, the Supreme Court recently denied certiorari on the very issue in *Jones*, explaining "[i]t is the responsibility of the Sentencing Commission to address this division to ensure fair and uniform application of the Guidelines." *Guerrant v. United States*, 142 S. Ct. 640, 640-41 (2022) (Sotomayor, J., joined by Barrett, J., respecting the denial of certiorari). And certiorari was denied even though the Court acknowledged "the Sentencing Commission has not had a quorum for three full years." *Id.* at 641. The Sentencing Commission is a bipartisan, independent agency charged by Congress with vital responsibilities. But without a quorum, the Sentencing Commission has no meaningful ability to resolve the problem presented here. These circumstances compel but one conclusion: the responsibility to address this important and divisive issue is ours. We should have granted en banc review.

13

**Conclusion**

This court's categorical approach jurisprudence has never adopted a definition that varied according to the state of conviction. I see no reason to start now. Because (1) the panel opinion in *Jones* abandons the fundamental requirements of *Taylor* without sufficient justification, (2) our approach to interpreting undefined terms in the Guidelines has been inconsistent, and (3) the implications of abandoning the uniformity requirement are far-reaching, I respectfully dissent from the denial of rehearing en banc.